**236**

STATE ex inf. George A. PEACH,
Circuit Attorney, City of St.
Louis, Relator,

v.

Billie A. BOYKINS, License Collector,
City of St. Louis, Respondent.

No. 71609.

Supreme Court of Missouri,
En Banc.

Nov. 14, 1989.

Steven R. Ohmer, John F. Garvey, Asst. Circuit Atty., George A. Peach, Circuit Atty., St. Louis, for relator.

Raymond Howard, St. Louis, for respondent.

ORIGINAL PROCEEDING IN
QUO WARRANTO

WILLIAM E. TURNAGE, Special Judge.

George Peach, the Circuit Attorney for the City of St. Louis, filed an original proceeding in the nature of quo warranto in this Court to oust Billie A. Boykins from the office of license collector for the City of St. Louis. This Court has jurisdiction pursuant to Article V, § 4 of the Constitution.

Boykins was elected as license collector in November, 1982 and re-elected in November, 1986, for a term ending December 31, 1990. The petition in quo warranto was filed on April 27, 1989, and alleges Boykins was guilty of willful violation and neglect of her official duties during the year 1987 and, by reason thereof, has forfeited her office.

This Court appointed the Honorable Frank Conley as Master to take evidence and make findings of fact and conclusions of law. The Master conducted hearings in St. Louis and filed his report on July 27, 1989, recommending that Boykins be removed from office.

The findings of fact and conclusions made by the Master constitute recommendations to this Court, and this Court makes its own findings and conclusions based on the record. *State ex inf. Danforth v. Orton*, 465 S.W.2d 618, 620 (Mo. banc 1971). A review of the evidence convinces this Court that the Master has reached the right conclusion and that Boykins should be removed from office.

The license collector of the City of St. Louis is charged by § 82.340, RSMo 1986,[1] with the issuance of all licenses and receipts for license taxes, except water, dramshop, and boat or wharf licenses. The collector is further required to prevent any person from carrying on any business, object, or calling for which a license, or license tax, is required without having a license, or license receipt, for that purpose. The failure of Boykins to collect license taxes forms the main charge brought by

---

1. All sectional references are RSMo 1986 unless   otherwise noted.

the Circuit Attorney and found by the Master.

The foundation of this ouster proceeding is an audit of the license collector's office performed by the State Auditor. Pursuant to § 29.230, the State Auditor was presented with a petition that called for an audit of the office of the St. Louis license collector. The auditor sent a team to Boykins' office to conduct the audit, which was performed over a period of four months. The auditor found numerous lapses and concluded that the collector had failed to collect between $3,000,000 and $9,000,000 in license taxes together with other violations and neglect of duty.

The Master heard evidence from several of the persons who actually conducted the audit.

■ At the outset of the hearing Boykins' counsel objected to the admission in evidence of the auditor's report because there was no proof that the petition requesting the audit contained the number of signatures of qualified voters required by § 29.230. Boykins renews that objection and states that the absence of evidence to demonstrate that the required number of qualified voters had signed the petition makes the audit illegal and inadmissible in evidence. Boykins cites no authority for this proposition but simply contends that the audit is illegal and, therefore, inadmissible. It is not necessary to determine the legality of the audit because, even if it be assumed that the audit was unauthorized or illegal because of a paucity of signatures, evidence obtained in an illegal manner is not subject to the exclusionary rule except in criminal cases. *In re Littleton*, 719 S.W.2d 772, 775 n. 2 (Mo. banc 1986). Thus, there is no reason to exclude the audit from evidence.

## FAILURE TO COLLECT LICENSE TAXES

The Master found that Boykins failed to collect $1,583,955 from 1,096 applications that were made for licenses. This was based upon the testimony of Clarence Frederitzi, Supervisor of the Central Business Index in the City Comptroller's office. Frederitzi stated that there were 1,096 applications for licenses sent to Boykins' office with total taxes of $1,583,955. This amount should have been paid in 1987 for licenses that would have expired in 1988. Frederitzi stated he never had a response from the license collector on any of these applications and, so far as he could tell, the tax due was not collected. Further, Frederitzi testified that he did not receive applications from 1,392 businesses requiring licenses for which licenses were issued in 1986. He received no information from the license collector that any of these businesses were no longer functioning.

Auditors who performed the State Auditor's examination testified that it was possible to determine how much money the collector had placed in bank accounts, but there were insufficient records in the collector's office to estimate how much should have been collected in license taxes. Testimony revealed that it would require a prohibitive amount of time to examine each of the records on the approximate 10,000 businesses in the City of St. Louis from which the collector was required to collect a license tax. Therefore, the auditor decided to estimate the amount of uncollected taxes by a statistical sample. The auditor examined all of the available records on 321 businesses, selected as the sample base, to determine whether or not each business purchased a license for the license year ending in 1988.[2]

The samples used by the auditor were only of those businesses for which definite

---

**2.** The auditor examined records in the collector's office for licenses that were due either on May 30 or June 30, 1987. In testimony, auditors referred to the licenses that should have bene purchased by those dates in 1987 as 1988 licenses. Boykins' counsel makes much of the fact that the auditor testified about 1988 licenses when the period examined ended on June 30,

1987, and contends that reference to 1988 licenses indicates the study covered a year that had not yet arrived. As explained, 1988 referred to the expiration date of the license, and the records involved were from the period ending May 30 and June 30, 1987, which was within the period covered by the sample study.

records could be obtained to show the status of whether a license had been issued or if no application for a license had been made. The auditor used Missouri Department of Revenue records, with location codes for the City of St. Louis, which gave the nature of the business and the amount of state sales tax remitted by that business, as a guide on the amount of license taxes that should have been collected. Because most license taxes in St. Louis are based upon gross receipts, the sales tax figures were utilized to determine the amount of revenue each of the businesses reported and to calculate the amount of license tax that should have been paid.

The auditor excluded revenues attributable to businesses for which the collector was not authorized to collect the license tax. There was testimony that the statistical sampling was performed in accordance with generally accepted practices and that the samples were selected in a random manner, so that each business had an equal chance of being selected. Testimony indicated that the statistical analysis had a standard deviation, with a 90% degree of confidence. From the sample the auditor projected that Boykins office in 1987 had failed to collect between $3,684,000 and $9,029,000. It was further concluded from the statistical analysis that about one-third of the businesses in St. Louis did not have a license and 28% of the businesses may have under reported their gross receipts.

Kimberly Lauer and David Keithley, two of the auditors performing the audit on behalf of the State Auditor, testified that they were present during the exit interview conducted with Boykins and her chief deputy, Henry Adams, after the auditors had concluded their audit. Lauer and Keithley testified that Adams said that he would be willing to accept that $3,000,000 in revenue had not been collected. Both stated that Boykins did not make any comment relative to Adams' statement.[3]

The only evidence offered by Boykins to counter the above evidence of failure to collect license taxes was presented by a CPA who had been contacted by Boykins' counsel the night before he was to testify. This CPA testified that he had spent two hours and forty-five minutes, just prior to testifying, in going over the records of the State Auditor pertaining to the statistical analysis. This CPA made various criticisms of the method employed by the State Auditor. However, he testified that he was not familiar with the state sales tax law and thus was not familiar with the fact that businesses reported gross revenue to the State Director of Revenue for state sales tax purposes. Boykins presented no evidence to show that she did properly perform her duties in collecting licenses and license taxes.

From an examination of the record this Court concludes that in 1987 Boykins failed to collect at least $3,000,000 in license taxes that were due. Although there was some conflict in the evidence relative to the statistical sampling technique used by the State Auditor, this Court may defer to the findings of fact made by the Master based upon conflicting testimony. *Orton*, 465 S.W.2d at 620. The Master had the opportunity to hear and observe the witnesses relative to the statistical sample conducted by the State Auditor, and this court defers to the finding of the Master in accepting the testimony that the State Auditor's statistical sampling was valid. This Court finds that at least $3,000,000 was uncollected by Boykins in 1987, including the $1,583,955 from the 1,096 applications, and that in all likelihood the amount was considerably more.

### INVESTING IN MUTUAL FUNDS

The auditor's report, and testimony from those persons performing the audit, revealed that between February, 1987, and March, 1988, Boykins invested about $3,700,000 in unsecured mutual funds. About $2,700,000 of the amount invested in these funds came from taxes that had been paid under protest. In *Preisler v. Hayden,*

3. After an invitation by the auditor for Boykins to make a written response to the auditor's report, Boykins made no response, despite the numerous findings in the auditor's report of the failure to collect license taxes, neglect of official duties, and miscellaneous other violations.

309 S.W.2d 645, 649[2] (Mo.1958), this Court held that the office of license collector for the City of St. Louis is classified as a county office. Section 139.031.7 applies to county collectors, and therefore to the license collector in St. Louis, and provides that all protested taxes shall be invested in the same manner as specified in § 30.260 for investment of state money. Section 30.260 requires state money to be deposited in time deposits drawing interest in banking institutions in this state, or invested in obligations of the United States, or any agency or instrumentality thereof.

In March, 1988, Boykins redeemed the mutual funds after becoming aware of an attorney general's opinion that tax revenues could not be invested in mutual funds. By the time the fund was redeemed the market value had declined $209,230 and Boykins was required to pay a deferred sales charge of $101,153. In total, the auditor calculated that the investment in mutual funds had cost the City $315,792 in lost revenue.

Boykins' defense is that she sought advice from the City legal department. There was no evidence that the legal department ever gave an opinion that investment in mutual funds was permissible. She further contends the funds were not City funds but were contested funds. It is immaterial whether the funds are classed as City funds when the statute mandates the permissible method of investment of taxes paid under protest. Boykins further contends that the redemption of the funds resulted in a net profit of $49,000. This does not take into account the loss of interest that could have been realized had the funds been properly invested. However, the important consideration is the fact that the investment was made in a fund unauthorized for the investment of taxes paid under protest and not that the mutual fund was redeemed for more than was invested. The investment of public money is closely guarded by statute to prevent loss and to realize some gain from interest. The object of investing public money is to fully protect the amount of money invested and not to speculate in risky investments.

Boykins knew, or should have known, that investment of taxes paid under protest in mutual funds was wholly unauthorized and improper.

## SALARIES

Prior to September 28, 1987, when a new statute became effective concerning employees' salaries, § 82.390 provided the salaries to be paid to employees of the license collector's office. The State Auditor calculated that Boykins had overpaid her employees by about $286,711 in 1986, and $67,539 from January 1, to September 28, 1987. Henry Adams admitted that the auditor's figures were correct.

## FAILURE TO PAY FUNDS TO THE CITY

The State Auditor acquired records on all existing bank accounts held by the license collector. By chance, the auditor found evidence of four bank accounts containing about $304,000, that had not been revealed to the auditor. The bulk of that amount was held in an account opened in 1983. Boykins' explanation was that the money in those accounts had been collected by a previous collector and could have been taxes paid under protest. However, there was no evidence that the money in those accounts had been paid under protest. Section 139.031.1 requires a taxpayer who pays taxes under protest to file a statement with the collector at the time of payment, setting forth the ground on which the protest is based. Further, § 139.031.2 requires suit to be filed against the collector within 90 days of the protest for the recovery of the tax. There was no evidence of any of the required action having been taken which would support Boykins' statement.

Section 82.400 requires the license collector to pay to the city treasurer, on Monday of each week, all monies received for licenses and license taxes. The City has been deprived of the use of the money in these four accounts for about four years because of Boykins' failure to pay such funds to the City. Had the auditor not found these accounts it is impossible to know when

those accounts would have been paid to the City.

## RETENTION OF HOTEL AND TOURIST TAX REVENUES

Pursuant to an agreement allowed by state law, Boykins was responsible for collecting hotel and tourist taxes for the Regional Convention and Visitors Commission. The taxes collected were to be remitted to the Commission, except for 2%, which Boykins was allowed to retain. According to the State Auditor, Boykins underpaid the Commission $19,293 between April, 1986, and May, 1987. The evidence amply supports this finding.

## VARIOUS OTHER VIOLATIONS

Because of various errors and inadequate bookkeeping Boykins failed to remit approximately $19,635 in merchants' and manufacturers' taxes to the various entities entitled to receive such revenue. Boykins was unaware of this until informed by the auditor.

An investigator from Boykins' office collected $1,800 from a business that had paid its tax with a check that could not be collected. The investigator succeeded in collecting the $1,800 but paid the collector's office only $520. Although the investigator was relieved of his duties, no action was taken by Boykins to collect the $1,280 due the collector's office.

Boykins was responsible for the sale of cigarette tax stamps to wholesalers and for the receipt and deposit of state cigarette funds from the department of revenue. Money from both sources were placed in the same account without any entry as to the source of the funds. The auditor found 270 more stamps in the possession of the collector than the record indicated should have been on hand. Although Boykins stated these stamps had been purchased but not picked up, there were no records produced to show that fact.

The Master found that Boykins failed to personally attend to the duties of her office. This Court does not base ouster on her failure to personally attend to the duties of her office, although the record strongly suggests that the office was actually operated and managed by the Chief Deputy, Henry Adams.

Section 106.270 provides that an official may be removed from office for any willful violation, or neglect of, official duty. Further, in *State on inf. McKittrick v. Williams*, 346 Mo. 1003, 144 S.W.2d 98, 103 [10, 11] (1940), this Court held that it is the policy of this state "that officers generally may be removed from office for misconduct in the performance of the duties of the office."

■ The burden is upon the circuit attorney to prove his case for ouster by a preponderance of the evidence. *State ex inf. Ashcroft v. Alexander*, 673 S.W.2d 36, 38[2] (Mo. banc 1984). The evidence recounted above shows willful violation and neglect of official duty on the part of Boykins. The central foundation of the office of license collector is to collect licenses and license taxes, yet the evidence shows that Boykins failed to collect at least $3,000,000, and probably more. This alone would be sufficient grounds for ouster. However, in addition, Boykins invested funds in a mutual fund in direct violation of the law, paid salaries to her employees in excess of the amount provided by law, failed to pay over to the City some $304,000 held in bank accounts accidentally found by the State Auditor, retained hotel and tourist taxes in excess of the amount she was allowed, and committed other violations of her official duties. The record in this case leaves no doubt that the people of the City of St. Louis have been deprived of a significant amount of revenue through the neglect of the license collector.

The excuse offered by Boykins, that she was not given sufficient office space or equipment and received poor cooperation from other officials, is as old as it is hollow. This Court answered such an excuse in *Williams* as follows:

> The excuses now advanced by respondent that he was engaged in other duties, that he had not a sufficient staff for proper enforcement, and that he relied on the advice of his statutory attorney are

not sufficient or valid. A public official holds his office cum onere with all responsibilities attached.

144 S.W.2d at 105 [22, 23].

The violations and neglect of duty found herein support the conclusion that Boykins should be ousted from her office.

The costs of this action are assessed against Boykins.[4]

It is ordered that Billie A. Boykins be and is hereby ousted from the office of license collector for the City of St. Louis.

BLACKMAR, C.J., and ROBERTSON, RENDLEN, HIGGINS, COVINGTON, and BILLINGS, JJ., concur.

HOLSTEIN, J., not participating because not a member of the Court when the case was submitted.

---

4. The motion filed by Boykins to relieve her from the order requiring her to pay a $1,000 deposit into the registry of this Court is now moot since the costs of this action have been assessed against her.