Jeffrey LASLEY, Respondent,

v.

DIRECTOR OF REVENUE, STATE OF MISSOURI, Appellant.

No. 79765.

Supreme Court of Missouri,
En Banc.

Oct. 21, 1997.

Rehearing Denied Nov. 25, 1997.

**328**

Jeremiah W. (Jay) Nixon, Atty. Gen., Suzanne Flannigan, Karen King Mitchell, Asst. Attys. Gen., James A. Chenault III, Sp. Asst. Atty. Gen., Mo. Dept. of Revenue, Jefferson City, for Appellant.

William J. Lasley, Carthage, for Respondent.

## PER CURIAM [1]

The Director of Revenue (the director) appeals an order rescinding the Department of Revenue's (the department) suspension of respondent Jeffrey Lasley's driver's license. The director contends the trial court erred in rescinding the suspension of respondent's driver's license because respondent was arrested upon probable cause to believe he had blood-alcohol content of ten-hundredths of one percent or more by weight at a time when he was in physical control of a motor vehicle preparing to back it from a driveway onto a city street. This Court agrees. The judgment is reversed, and the cause is remanded.

Shortly after midnight the morning of December 23, 1994, police officer Kevin Mitchell observed persons inside a Carthage residence whose owners were on vacation in Europe. As Officer Mitchell watched the house, two people came out the front door and got into a pickup truck parked in the driveway—two other vehicles were parked in the driveway in front of the pickup. Officer Mitchell gave the following account to the trial court:

> Well, the vehicle started, the backup lights came on and started to back out of the driveway. It reached the—the bottom portion of the driveway where it angles into the roadway, and that's when I pulled up. I pulled my patrol car up, blocked the driveway so they wouldn't get out into the street, and they pulled back into the drive.

Officer Mitchell got out of his patrol car and approached the pickup. Respondent was seated in the driver's position behind the steering wheel. He told the officer he came to the house with friends. While talking to respondent, Officer Mitchell noticed the odor of intoxicants coming from the vehicle. He also noticed respondent's eyes were bloodshot and his speech was slurred. Officer Mitchell administered three field sobriety tests to respondent in addition to asking

---

1. The appeal in this case was originally decided by the Court of Appeals, Southern District, in an opinion written by the Honorable John E. Parr- ish. Following transfer to this Court, the court of appeals opinion, as modified, is adopted as the opinion of this Court.

respondent to recite the alphabet. Respondent omitted one letter when he recited the alphabet. In the opinion of the officer, respondent failed all three of the tests.

Respondent was arrested for driving while intoxicated. He was transported to the police department, and a breath analysis examination was administered. The test indicated a blood-alcohol level of twelve-hundredths of one percent. Notice of suspension of driver's license was served on respondent in accordance with section 302.520.1.[2]

The department suspended respondent's driver's license as required by section 302.505. The suspension was upheld following an administrative hearing. *See section 302.530.4.* Respondent filed a petition for trial de novo in the Circuit Court of Jasper County as permitted by section 302.535. Following a trial, the department's order suspending respondent's driver's license was rescinded.

The administrative procedure governing suspension and revocation of driver's licenses is prescribed by sections 302.500 to 302.535. An officer who arrests a driver for violation of a municipal ordinance prohibiting driving while intoxicated is required to submit to the department a "report of all information relevant to the enforcement action, including information which adequately identifies the arrested person," together with a statement of the grounds on which the officer bases his or her belief the person arrested violated the municipal ordinance in question. *Section 302.510.1.* The report must provide the results of any chemical tests that were conducted and a copy of any charges filed. *Id.*

Section 302.505.1 states:

The department shall suspend or revoke the license of any person upon its determination that the person was arrested upon probable cause to believe he was driving a motor vehicle while the alcohol concentration in the person's blood or breath was ten-hundredths of one percent or more by weight of alcohol in his blood, . . . .

The determination section 302.505.1 requires is based on the arresting officer's report. *Section 302.505.2.* If a hearing is held, the final determination is based on the evidence received at the hearing. *Id.*

The director's points on appeal relate to the statutory requirement that the person whose license is suspended must have been arrested upon probable cause to believe he was driving the motor vehicle at a time when his blood alcohol concentration exceeded ten-hundredths of one percent by weight. The points are directed to: 1) whether the arresting officer had probable cause to believe respondent was intoxicated at the time he was arrested, and 2) the question of what constitutes "driving" for the purpose of an arrest for driving while intoxicated.

The director contends the trial court erred in rescinding the order suspending respondent's license because Officer Mitchell had probable cause to arrest respondent for driving while intoxicated based on the "indicia of intoxication" he observed. Respondent questioned the legality of the arresting officer's initial stop during the course of the trial de novo. He contends there was no articulable and reasonable suspicion that criminal activity was occurring at the time he was arrested.

■■■ As previously noted, the owners of the residence where respondent's vehicle was parked had requested the police to provide extra patrol while they were out of the country. While providing that extra patrol, Officer Mitchell observed respondent exit the residence. He approached the respondent's vehicle and smelled alcohol. He administered a series of field sobriety tests to respondent. In his opinion respondent failed those tests. Additionally, Officer Mitchell observed that respondent's eyes were bloodshot and his speech was slurred. The officer had probable cause to believe respondent was intoxicated. To the extent the trial court may have based its decision on a finding that the arrest was illegal for a lack of articulable and reasonable suspicion of criminal activity, or that there was no probable cause for Officer Mitchell to have concluded respondent was intoxicated, the trial court's ruling was erroneous.

---

2. References to statutes are to RSMo 1994 unless stated otherwise.

■ The director also asserts the trial court erred in relying on respondent's claim that he did not cause his vehicle to move at the time Officer Mitchell observed him. The director contends that all that was required to be shown was that respondent was in control of his vehicle at the time in question.

Although Officer Mitchell testified that he observed respondent backing his pickup out of the driveway that led to the city street, respondent testified that he did not move the pickup from where it was parked. He testified that he and a friend, Josh Thompson, walked outside. Respondent was going to move his pickup from the driveway where it was parked to the city street. He told the trial court:

> We both just walked outside, went straight over to my truck, got in. I turned on my ignition. At that point Josh said, "Jeff, there's a cop behind us." I shut off my ignition and waited for the cop to approach—or the policeman to come up.

On cross-examination, respondent was asked, "Would you say you were in a position to regulate the vehicle?" He answered, "Yes."

The issue the director raises was addressed by the court of appeals in *Hines v. Director of Revenue*, 916 S.W.2d 884 (Mo. App.1996). The vehicle involved in *Hines* was in a ditch. A police officer approached the vehicle to see if its occupants needed assistance. Mrs. Hines and her husband were in the automobile. She was in the driver's seat with her hands on the steering wheel. The engine was running. The police officer determined that Mrs. Hines was intoxicated. He arrested her for driving while intoxicated although the evidence was that another person had driven the Hines' vehicle prior to it becoming stuck; that Mrs. Hines crawled over the front seat when the person who drove the vehicle into the ditch argued with Mr. Hines and walked away from the vehicle.

In *Hines* the director argued that the fact someone other than Mrs. Hines drove the vehicle into the ditch did not matter; that since she had control over the vehicle when the police officer arrived, the officer had probable cause to arrest her for driving while intoxicated, and there was a sufficient basis to suspend her driver's license. The court of appeals agreed, relying on *Chinnery v. Director of Revenue*, 885 S.W.2d 50 (Mo.App. 1994), in finding for the director. The court observed, with respect to *Chinnery*, "The court held that driving or operating a vehicle occurs 'even when the vehicle is motionless as long as the person is keeping the vehicle in restraint or is in a position to regulate its movements.'" 916 S.W.2d at 886.

In *Hines*, the court of appeals held that since Mrs. Hines was in a position to regulate the vehicle's movement, she was driving the automobile for purposes of the requirements for the administrative suspension of her driver's license; that the trial court misapplied the law in reinstating her license.

In this case, as in *Hines* and *Chinnery*, respondent was in control of his motor vehicle in a position to regulate its movement at the time he was arrested for driving while intoxicated.[3]

Respondent argues that regardless of the foregoing, the trial court did not have credible evidence before it concerning his blood-alcohol content. He contends the state failed to prove that a Type II permit holder had performed the requisite maintenance check on the breathalyzer machine within thirty-five days of the date his test was administered; that a timely objection was made to the admission of the test results that the trial court erroneously overruled.

19 CSR 25–30.031(3) states:

> A Type II permittee shall perform maintenance checks on breath analyzers under his/her supervision at intervals not to exceed thirty-five (35) days. . . .

---

**3.** It is arguable that a different result might be reached had the suspension of respondent's driver's license been based on conduct occurring after August 28, 1996. The definition of "driving" in section 577.001 on which *Hines* and *Chinnery* relied has been changed. The statute was amended in 1996 to define "drive", "driv-
ing", "operates" or "operating" to mean "physically driving or operating a motor vehicle." *Section 577.001.1, RSMo Supp.1996.* At the time respondent was arrested the section 577.001.1 definition was "physically driving or operating *or being in actual physical control of a motor vehicle.*" [Emphasis added.]

■ If timely objection is made to the admission of blood-alcohol test results, the department must prove the machine used in the test had been checked by a Type II permit holder within thirty-five days of the date of the breathalyzer test was administered. *Sellenriek v. Director of Revenue*, 826 S.W.2d 338, 341 (Mo. banc 1992). The objection must be to the admission of the blood-alcohol analysis. *Id.* It must be sufficiently clear and definite to enable the trial court to understand the reason for the objection. *Reed v. Director of Revenue*, 834 S.W.2d 834, 836 (Mo.App.1992). "[A]n objection encompassing a broad range of situations that are not readily apparent does not preserve error." *Id.*

■ The result of the test was included in a written report completed by Officer Mitchell. When the report was offered in evidence, the following objection was made:

Well, I do object to portions of it, Your Honor, because it contains a conclusion. The four-page alcohol influence report contains a conclusion about the blood-alcohol results, and it doesn't contain the foundational requirements for the admission of— of the reports. Specifically, it doesn't—it doesn't narrate whether there was any deviation from procedure approved by the Department and whether the machine was functioning properly, and whether there was any radio transmission interference that might have had an influence upon the machine. Therefore, I think the conclusion part of that is—is improper.

The trial judge stated he was not certain that he understood the objection. When it was explained that the written report was what was being offered in evidence, the trial judge asked if the objection remained the same. Respondent's attorney answered, "I don't have any objection—Well, I haven't read the—it's been a while since I've read the narrative report. But if there's any—if there are any conclusions in it, too, as to what he tested, then I object to that." The objection was overruled.

Respondent's objection was not based on a lack of proof of compliance with the thirty-five day test requirements by a Type II permit holder. The objection addressed a broad range of situations. It was not readily apparent that the objection was directed to a failure to prove the thirty-five day test had been performed. The evidence that respondent's blood-alcohol content was in excess of ten-hundredths of one percent was properly before the trial court.

The judgment is reversed. The cause is remanded. The trial court is directed to enter judgment affirming the department's order suspending respondent's driver's license.

BENTON, C.J., and PRICE, COVINGTON, WHITE and HOLSTEIN, JJ., concur.

LIMBAUGH, J., concurs in result in separate opinion filed.

ROBERTSON, J., concurs in opinion of LIMBAUGH, J.

LIMBAUGH, Judge, concurring.

This Court granted transfer to resolve a conflict among the appellate courts regarding the propriety of an administrative license suspension predicated on probable cause to arrest but obtained after an unlawful stop. The majority skirts this important issue by putting the proverbial cart before the horse, that is, by holding (accurately, I believe) that the stop was not unlawful in the first place. I find no need to make that determination because the lawfulness of the initial stop is irrelevant in civil cases. As I will explain, even if the stop was unlawful, the exclusionary rule is only applicable in criminal cases and should not be used to preclude the subsequent finding of probable cause to arrest necessary to support an administrative license suspension.

A license revocation or suspension under section 302.505.1 requires that the arresting officer have probable cause to believe that the person driving the motor vehicle is intoxicated, and the facts of this case clearly support the majority's conclusion on that point. In addition to challenging the officer's probable cause determination, however, Respondent also challenges the legality of the initial stop. This claim has no statutory basis be-

cause section 302.505.1 does not require the arresting officer's initial stop to be based on reasonable suspicion or probable cause. *See Gordon v. Director of Revenue,* 896 S.W.2d 737, 740 (Mo.App.1995). Instead, the language of the statute focuses solely on the officer's basis for believing that the driver is intoxicated, which is a different issue.

There is also no constitutional basis for excluding the evidence that Respondent was intoxicated. Of course, in criminal cases, evidence that has been obtained as the result of an unconstitutional stop may be subject to the exclusionary rule. *See State v. Miller,* 894 S.W.2d 649, 654 (Mo. banc 1995). In civil cases, though, evidence is not subject to the exclusionary rule despite the fact that it has been obtained in an illegal manner. *See Peach v. Boykins,* 779 S.W.2d 236, 237 (Mo. banc 1989); *In re Littleton,* 719 S.W.2d 772, 775 n.2 (Mo. banc 1986); *Gordon,* 896 S.W.2d at 740; *Sullins v. Director of Revenue,* 893 S.W.2d 848, 850 (Mo.App.1995). Missouri courts have recognized that a license revocation or suspension proceeding is a civil proceeding, *see Sullins,* 893 S.W.2d at 850; *Green v. Director of Revenue,* 745 S.W.2d 818, 820 (Mo.App.1988), and thus, it is repeatedly held in those cases that evidence obtained as the result of an illegal stop is not subject to the exclusionary rule. *See, e.g., Gordon,* 896 S.W.2d at 740; *Sullins,* 893 S.W.2d at 850; *Barish v. Director of Revenue,* 872 S.W.2d 167, 172 (Mo.App.1994).

Respondent contends that his case is controlled by this Court's decision in *Aron v. Director of Revenue,* 737 S.W.2d 718 (Mo. banc 1987). While the *Aron* decision correctly recognized that the arresting officer must have probable cause to believe that the driver was intoxicated, the opinion went further by holding, at least by implication, that the requirement of probable cause extended also to the initial stop of the driver. *Aron,* 737 S.W.2d at 719–20. A number of appellate court decisions have followed suit, citing *Aron* to support the contention that a license revocation or suspension must be based upon a lawful stop. *See, e.g., Cook v. Director of Revenue,* 890 S.W.2d 738, 739–40 (Mo.App. 1995); *Stark v. Director of Revenue,* 774 S.W.2d 842, 843 (Mo.App.1989); *Edwards v.*

*Director of Revenue,* 769 S.W.2d 483, 484 (Mo.App.1989).

In imposing the requirement for probable cause to stop, the *Aron* Court, in a rather cursory, two-page *per curiam* opinion, not only failed to cite authority for its holding, but also failed to address the issue of whether the exclusionary rule should apply in the civil context. In fact, the *Aron* case is directly contrary to other decisions of this Court holding that the exclusionary rule is not applicable in civil cases. *Peach,* 779 S.W.2d at 237; *Littleton,* 719 S.W.2d at 775 n. 2. In my view, *Aron* is simply an aberration and should be overruled to the extent that it imposes a probable cause requirement on the initial stop.

To conclude, neither statutory nor constitutional considerations make the admission of intoxication evidence in a license revocation or suspension proceeding dependent on the legality of the initial stop. It is unnecessary, therefore, for this Court to reach the issue of whether the arresting officer's initial stop was supported by probable cause or by an articulable and reasonable suspicion of criminal activity. For these reasons, I am unwilling to join the majority opinion, but I would nevertheless reverse the judgment of the trial court.