STATE of Missouri,
Plaintiff–Respondent,

v.

Gene HOLLIS, Defendant–Appellant.

No. 16752.

Missouri Court of Appeals,
Southern District,
Division Two.

Oct. 29, 1990.

Motion for Rehearing or to Transfer
Denied Nov. 20, 1990.

Application to Transfer Denied
Jan. 9, 1991.

Roy W. Brown, Bruce B. Brown, Kearney, for defendant-appellant.

Todd F. Thorn, West Plains, for plaintiff-respondent.

FLANIGAN, Chief Judge.

A jury found defendant Gene Hollis guilty of driving while intoxicated, § 577.010,[1] a class B misdemeanor, and he was sentenced to ten days' confinement in jail and a fine of $250. The trial court suspended execution of the jail term. Defendant appeals.

Defendant's sole point is that the evidence is insufficient to support the verdict, and the trial court erred in ruling otherwise, because the state failed to prove that defendant, on or about April 3, 1989, "operated a motor vehicle on County Road 668 while under the influence of alcohol," as charged in the information.

In determining the validity of defendant's point, this court must view the evidence in the light most favorable to the state, accept all substantial evidence and all legitimate inferences fairly deducible therefrom tending to support the verdict, and reject contrary and contradictory evidence. *State v. Petrechko*, 486 S.W.2d 217, 218[1] (Mo.1972); *State v. Hunt*, 780 S.W.2d 159, 160 (Mo.App.1989). All evidence unfavorable to the state must be disregarded. *State v. Unverzagt*, 721 S.W.2d 786 (Mo.App.1986); *State v. Hunt*, *supra*, at 160.

A person commits the crime of driving while intoxicated if he operates a motor vehicle while in an intoxicated or drugged condition. § 577.010.1. As used in Chapter 577, "operates" or "operating" means "physically driving or operating or being in actual physical control of a motor vehicle." § 577.001.1. As used in Chapter 577, a person is in an intoxicated condition "when he is under the influence of alcohol, a con-

---

**1.** All references to statutes are to RSMo 1986, V.A.M.S.

trolled substance or drug, or any combination thereof." § 577.001.2.

The state's witnesses included Melissa Wright, William Wright, and Deputy Sheriff Wilburn King. Viewed favorably to the verdict, the evidence showed that at 2:35 a.m. on April 3, 1989, Melissa Wright, age 19, heard a car come up County Road 668 "that we lived next to." About ten minutes later Melissa realized there was a car in the back yard. She looked out her upstairs window and saw a car parked in the driveway. "He had just pulled in." The car was still "running." Melissa could hear it running and the lights were on. County Road 668 is the only county road that goes by Melissa's house "unless you count the highway ['Old Highway 160'] that it attaches to." Melissa's driveway "comes out onto the county road."

Cross-examination of Melissa by defense counsel included the following:

"Q. And—Now, you think about this before you answer. Can you honestly say and tell this jury under oath that the car that you realized was in your driveway was the same car that you claim you heard coming down the road?

A. Yes.

.     .     .     .     .

Q. Well, how many other cars went up and down the road that evening?

A. None. Not that late.

.     .     .     .     .

Q. I understand that. Now, when you heard this car though that you say out in the road, you didn't hear it pull into your driveway; did you?

A. Yeah, the dogs were raising cane."

Upon seeing the car in her driveway, Melissa awoke her father, William Wright. He told her to call the sheriff, and she did so. At 3 a.m. Deputy King arrived at the Wright home.

William Wright, after he had dressed, went to the back porch and saw the vehicle "parked in my driveway." After Deputy King arrived, the two men went to the car. Defendant was the sole occupant of the vehicle and was sitting behind the steering wheel. The engine was running and, according to Wright, the headlights were on. King testified the headlights were off. Wright's observation of the defendant and his movements, after defendant got out of the vehicle, led Wright to believe defendant was intoxicated.

Deputy King testified that he arrived at the Wright home at 3 a.m. and that defendant was seated behind the steering wheel of the vehicle with the engine running. Defendant appeared to be asleep. King asked defendant to step out of the car, and he did so. King noticed that defendant "smelled like an alcoholic beverage type smell."

Using a blackboard diagram previously drawn by Wright in the presence of the jury, Deputy King identified County Road 668 and its location with respect to Wright's driveway. That diagram was not preserved for appellate review,[2] but that fact does not affect the disposition of this appeal.

King testified that defendant, upon getting out of the vehicle, was confused, incoherent, and "slurring his words." Defendant was "very uncoordinated" and failed to pass the "partial field sobriety test" which King administered. After receiving the Miranda warnings, defendant told King that defendant had been drinking "at the Am–Vets on Old Highway 160 about 100 or 150 yards up from Wright's house."

On cross-examination, King testified that the vehicle "was completely on Wright's property, on private property." The following then occurred:

"Q. Do you have any witnesses anywhere that can testify that you know of

---

**2.** At least two state courts have held that where a blackboard diagram was used by the state in a criminal trial, the burden to provide an adequate appellate record was on the defendant and that the guilty verdict and judgment altered the presumption of innocence. Thus defendant, on appeal, could not benefit from the fact that the diagram was not before the appellate court. *State v. Bellanceau,* 367 A.2d 1034, 1037–1038[5–8] (Maine 1977); *State v. Blackburn,* 34 N.C. App. 683, 239 S.E.2d 626, 628[3, 4] (1977). See also *Jackson v. State,* 514 S.W.2d 532 (Mo.1974).

that Mr. Hollis drove that vehicle to that location?

A. Only Mr. Hollis.

Q. Well, he didn't tell you he drove it there; did he?

A. Yes, sir, he did."

The state introduced evidence that a blood alcohol test, administered to defendant at the sheriff's office at 3:29 a.m., reflected ".145 percent." Other officers testified that defendant was intoxicated at the sheriff's office.

Defendant admits that the state "proved that defendant was in actual physical control of the vehicle on the Wright driveway," and also admits that the state "proved that defendant was intoxicated when contacted by Deputy King."

Defendant argues that the state "failed to clearly exclude every reasonable hypothesis that someone other than defendant had operated the motor vehicle on County Road 668." Defendant says, "One can reasonably conclude that someone else drove the vehicle on County Road 668, turned into the driveway, turned off the headlights, exited the vehicle and departed the area, probably returning to the Am–Vets Club. Defendant then could have moved over to the driver's side, placing himself in a position to operate the motor vehicle. Adequate time and opportunity existed for those events to occur and for defendant to begin dozing."

The foregoing argument may demonstrate that defendant's counsel has a lively imagination, but it has no merit. The fact is that Deputy King and Mr. Wright were present while defendant was in the very act of violating § 577.010.

■ Defendant was sitting behind the steering wheel of the vehicle and was its sole occupant. The motor was running. He was, therefore, "operating" the vehicle within the meaning of § 577.010. *State v. O'Toole,* 673 S.W.2d 25, 27[4] (Mo. banc 1984); *State v. Nickerson,* 763 S.W.2d 716, 717[2] (Mo.App.1989). "One can be 'operating' a vehicle although he is passed out or asleep in the passenger compartment and the vehicle is running." *Nickerson,* at 717.

Another case holding that being asleep does not negate physical control is *State v. Hoeber,* 737 S.W.2d 484, 486 (Mo.App. 1987).

■ It was unnecessary for the information to charge, as it did, that the operation of the vehicle took place "on County Road 668." Section 577.010.1, set forth in the fourth paragraph of this opinion, became effective on January 1, 1979, and superseded § 564.440, which read: "No person shall operate a motor vehicle while in an intoxicated condition." Cases involving the superseded statute held that "there is no requirement that to constitute the offense it either be alleged or proved that the motor vehicle was operated by the defendant on a public road or highway." *State v. Barker,* 490 S.W.2d 263, 270[5] (Mo.App. 1973). To similar effect see *State v. Davis,* 143 S.W.2d 244, 247[4–5] (Mo.1940); *State v. Pike,* 312 Mo. 27, 278 S.W. 725, 726[4] (1925); *State v. Hatcher,* 303 Mo. 13, 259 S.W. 467, 470[8] (1924). In *Hatcher* the information charged that the act was committed on a public highway. The supreme court said: "While the evidence so showed, the trial judge properly treated the allegation as surplusage and the proof was unnecessary." A conviction for violating § 577.010 was affirmed in *State v. Hoeber, supra,* where the defendant was found behind the steering wheel of his vehicle on the parking lot of a grocery store.

In the case at bar, the offense was committed in the Wright driveway and it was unnecessary for the prosecutor to have included in the information the allegation that the offense was committed on County Road 668. It is unnecessary to determine whether that additional language could be disregarded as surplusage because the evidence also supported a finding that the operation took place on County Road 668 and that defendant did so under the influence of alcohol.

The judgment is affirmed.

HOGAN and SHRUM, JJ., concur.