**STATE of Missouri, Respondent,**

v.

**Charles Dale CROSS, Appellant.**

**No. WD 57145.**

Missouri Court of Appeals,
Western District.

Nov. 14, 2000.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Dec. 26, 2000.

---

Seth Shumaker, Kirksville, for appellant.

R. Timothy Bickhaus, Pros Atty., Macon, for respondent.

PAUL M. SPINDEN, Chief Judge.

Charles Dale Cross appeals the circuit court's judgment convicting him of the Class B misdemeanor of driving while intoxicated. He contends that the state's evidence was insufficient to establish that he was driving while intoxicated. He also contends that his arrest by Macon police officers was illegal because the alleged infraction occurred outside Macon's jurisdictional limits and that the circuit court erred in admitting evidence of a breathalyzer test's results because the state did not establish that it was competent evidence. We affirm the circuit court's judgment.

The evidence established that on December 13, 1998, Macon police officer Christopher Bowzer was dispatched to investigate a report of a person slumped over in the seat of a car parked near U.S. 36 and Long Branch Road. Bowzer found the car parked with its engine running and its headlights on. The driver's door was open, and Cross' legs were hanging out and touching the ground. The car was parked outside Macon's city limits, but, because he was concerned about Cross' health, Bowzer continued to investigate. He found Cross asleep or unconscious, lying across the front seats. Bowzer could not arouse him. Bowzer radioed his dispatcher to summon a Highway Patrol trooper to the scene.

Before a trooper arrived, two other Macon police officers arrived to assist Bowzer. Bowzer testified that one of them,

Officer Toal,[1] awakened Cross by shaking him and yelling at him. Cross then turned off the car's headlights and engine and removed the keys from the ignition. He attempted to get out of his car, but Toal told him to remain in the car and took the keys from him. When Toal asked Cross how much he had to drink, Cross responded, "Not enough."

Highway Patrol Trooper Kelley[2] arrived a brief time later and ordered Cross to get into his patrol car. Highway Patrol Trooper John Siecinski arrived moments later and spoke with the Macon officers and Trooper Kelley about what they had observed.

Siecinski testified that he noted a strong odor of intoxicants about Cross and saw two empty beer bottles in Cross' car. He said that Cross' eyes were watery, bloodshot and glassy, his speech was slurred, his balance was "uncertain, swaying ... [and] wobbling," his walk was "swaying, staggering and slow," and he swayed and was uncertain when asked to turn while walking. Siecinski said that he concluded from this that Cross was intoxicated, but, because of Cross' condition and safety concerns, he decided not to conduct field sobriety tests.[3] Siecinski formally arrested Cross for driving while intoxicated and took him to the Macon County sheriff's office where Cross consented to a breathalyzer test which indicated that his blood alcohol content was .182 percent.

Cross contends that the state's evidence was not sufficient to establish that he was operating a motor vehicle as that term is used in § 577.010.1, RSMo 1994. The statute says, "A person commits the crime of 'driving while intoxicated' if he operates a motor vehicle while in an intoxicated or drugged condition."[4] In § 577.001.1, RSMo Cum.Supp.1999, the General Assembly defined "operates:" "As used in this chapter, the term ... 'operates' ... means physically driving or operating a motor vehicle."[5]

The primary rule of statutory construction is to ascertain what the General Assembly intended and to give effect to that intent, and we ascertain that intent primarily by deeming the General Assembly to have intended the plain and ordinary meaning of the words it uses in a statute. *Spradlin v. City of Fulton,* 982 S.W.2d 255, 258 (Mo. banc 1998). "Operating" is a broad term which the General Assembly did not define.[6] We presume the General Assembly to have intended for us to give "operating" its plain and ordinary meaning. " 'Absent a statutory definition, the words used in the statute will be given their plain and ordinary meaning as derived from the dictionary.' " *State v. Hibler,* 5 S.W.3d 147, 149 (Mo. banc 1999) (quoting *Columbia Athletic Club v. Director of Revenue,* 961 S.W.2d 806, 809 (Mo. banc 1998)).

The dictionary defines "operate" as "to cause to function[.]" Webster's Third New International Dictionary of the English Language Unabridged 1581 (1971). This lends itself to a broad understanding of the term, and indeed the Supreme Court has been broad in its treatment of the term. We note as an example—and

1. The record does not provide Officer Toal's first name.

2. Again, the record fails to give Trooper Kelley's first name.

3. Siecinski said that "the subject was well intoxicated, and the—the conditions of the roadway with the mud, the lack of shoulders that was there, it, to me, seemed like it was a safety issue. And ... there was no doubt in my mind that he was intoxicated."

4. The emphasis is in the original.

5. The emphasis is in the original.

6. The General Assembly merely defined the terms "operates" or "operating" as "operating a motor vehicle." Section 577.001.1. While the definition restricts its application to motor vehicles, the General Assembly assumed that anyone reading the statute would know what operating means or could consult a dictionary.

strictly as an example of its acceptance of a broad definition of "operating"—that the Supreme Court, in construing the term in § 304.010 RSMo 1949, declared that "operating" encompassed:

> "[A]ll acts ... fairly incidental to the ordinary course of [an automobile's] operation, including not only the act of stopping en route for purposes reasonably associated with the transit but also all acts which, in point of time and circumstance, are reasonably connected with entering the vehicle at the point of departure and alighting therefrom at destination."

*Teters v. Kansas City Public Service Company*, 300 S.W.2d 511, 516 (Mo.1957) (quoting *Karnes v. Ace Cab Company*, 287 S.W.2d 378, 380 (Mo.App.1956)).[7] Indeed,

"[f]or purposes of chapters 304 *and 577,* Missouri courts have repeatedly construed 'operator' broadly." *Gibbs v. National General Insurance Company,* 938 S.W.2d 600, 604 (Mo.App.1997) (emphasis added).[8]

■ We make this point, not because a broad definition is necessary, but to assert that Cross' actions clearly fit within the term. Nonetheless, it seems important to emphasize that, by not defining "operate," the General Assembly prompts us to apply the plain and ordinary meaning of the term which can be—and has been—defined quite broadly. We must assume that the General Assembly wanted us to construe the word in its plain and ordinary sense rather than rewriting the statute to match our understanding of "context."[9]

7. The dissent criticizes our citing the Teters' definition of operating. We rely on the dictionary definition, and we cite Teters merely as an example. Nonetheless, the dissent reads Teters too narrowly. The dissent emphasizes that the "definition of 'operating' ... cannot be deemed applicable to the context of Section 577.010." Op. at 187. The dissent asserts that "[t]he Teters Court specifically noted that cases interpreting 'operating' or 'driving' in the context of other statutory traffic regulations were not applicable to interpreting its meaning under § 304.010." Slip op. at 7. Focusing, however, on the Teters court's full analysis renders an opposite conclusion. The court said, "A defendant's judgment in plaintiff's case of *McLarney v. Cary,* Mo.App., 98 S.W.2d 144, 146, was affirmed because plaintiff was guilty of contributory negligence as a matter of law. The dictum therein, loc. cit. 146[3], that a motor vehicle while parked is not being operated and the operator need only exercise ordinary care, whether right or wrong, is not controlling here. The cases of *Freed v. Mason,* Mo.App., 137 S.W.2d 673, 676[4] and *Jones v. Southwest Pump & Mach. Co.,* 227 Mo.App. 990, 60 S.W.2d 754, 757[4], involved other traffic regulations than the one under consideration; and, sufficient for the purposes here, *Schorling v. United States Fidelity & Guaranty Co.,* 239 Mo.App. 431, 188 S.W.2d 369, 370[3], was an action on an accident insurance policy and the automobile was not on the highway." 300 S.W.2d at 517. Looking at the cases that the Teters court chose not to rely on is important. It is evident that the court rejected them because of their *specific facts,* not because context somehow affected the proper interpretation of "operating." Even if we were doing more

than using Teters as an example of the Supreme Court's acceptance of a broad definition of "operating"—and we are not—nothing in Teters causes us to conclude that the court was confining its definition of "operate" to § 304.010 and that it did not intend for it to be applied in the interpretation of other statutes.

8. The dissent criticizes our citing the Gibbs case because the Gibbs court said, "[T]he key to operation of a motor vehicle in Missouri is actual physical control." 938 S.W.2d at 604. The dissent asserts "the definitions examined in Gibbs are inapplicable" to this case because "the Legislature specifically amended § 577.001.1 so that 'actual physical control,' the 'key' to the definitions considered in Gibbs, no longer constitutes 'operating' under Chapter 577." Op. at 188. First, we do not rely on Gibbs for its definitions but merely for the proposition that "courts have repeatedly construed [the term] 'operator' broadly." 938 S.W.2d at 600. Second, although an intoxicated individual may no longer be punished for being only in "actual physical control" of a vehicle, the dissent surely is not suggesting that an intoxicated individual can drive and operate a vehicle without being in "actual physical control." Hence, it remains true that "[t]he key to operation of a motor vehicle in Missouri is actual physical control."

9. The dissent relies on *Wombles v. Gen. Am. Life Ins. Co.,* 541 S.W.2d 45, 47 (Mo.App. 1976), to assert that the definition of operating varies according to the context in which it is used. Op. at 187. While acknowledging

We certainly concur with the dissent that "[t]he Judiciary's duty is not to write or re-write statutes." Op. at 191. That is why we refrain from doing so.

■ Given this understanding, and without trying to articulate every activity that is included in "operating a motor vehicle," we have no difficulty concluding that Cross' case fits within the definition of § 577.001.1 and that the state presented sufficient evidence to establish his guilt beyond a reasonable doubt. When Bowzer first arrived, Cross was on the driver's side of the car, lying across the front seats with the engine running. No one else was in the vehicle. Though circumstantial, the state's evidence was sufficient for a fact finder reasonably to conclude that he had turned on the car's engine. *See Baptist v. Lohman,* 971 S.W.2d 366, 368 (Mo.App. 1998).[10] After officers aroused Cross, he immediately turned off the headlights and turned off the engine.[11] In the ordinary sense of the word, he was operating the car.[12]

Cross argues that, before the General Assembly amended § 577.001.1 in 1996, it defined "operating" as "physically driving or operating or being in actual physical control of a motor vehicle." He notes that

in many drunk driving cases involving a sleeping person the courts held the person to be operating under the "actual physical control" part of the definition. He argues first that he was not inside the car—he was only partly in—and second that, because he was asleep and because the General Assembly deleted "actual physical control" from the definition, his case did not fit the definition of operating.

Indeed, the dissent uses this argument to assert that we are ignoring the General Assembly's amendment of § 577.001.1— that our reading of the amended statute results in the amendment's having no effect whatsoever. To the extent that this court has distinguished actual physical control from operating or driving, this argument fails. This court made this distinction in *Wilcox v. Director of Revenue,* 842 S.W.2d 240 (Mo.App.1992). The *Wilcox* court found that an intoxicated person who was asleep behind the steering wheel of a car parked in the traffic lane of a highway without the engine running was in actual physical control of the vehicle. After the General Assembly's amendment of § 577.001.1, however, the individual in *Wilcox* could no longer have his driving privi-

that court opinions frequently say that "the word 'operate' has varying meaning according to the context which primarily determines its meaning[,]" the Wombles court went on to say, "We can scarcely conceive a more precise way of saying that the word 'operation' is ambiguous, but *we do not base our holding upon a ruling that here the word 'operation' is ambiguous 'in context', whatever that may mean.*" 541 S.W.2d at 47 (emphasis added).

10. *But cf. Mayberry v. Director of Rev.,* 983 S.W.2d 628 (Mo.App.1999). We are aware of the teaching of the Baptist case that "a motorist may no longer be found to be driving while intoxicated merely because he is in 'control' of a running automobile[.]" 971 S.W.2d at 368. The Baptist court, however, concluded its observation by stating that § 577.001.1, as amended, would permit "operating a motor vehicle" to be established by circumstantial evidence. *Id.* The circumstantial evidence in this case establishes that Cross was operating the car, and the direct evidence establishes

that he operated the car by turning off the car's engine and headlights.

11. The dissent seems to suggest that, because Cross was startled when he was awakened by "loud verbal commands" and by "physical stimulation," we cannot conclude that Cross was operating the car. Op. at 189, n. 2.We fail to see what relevance Cross' being startled has on the issue of whether he was operating the car. It just indicates that he operated it while startled.

12. The dissent asserts, "It is totally illogical and inconsistent with the intent of the Legislature to suggest that the manipulation of a device on a vehicle for the purpose of preventing it from being driven, or for a purpose other than to engage the motive power of the vehicle, constitutes driving while intoxicated in violation of § 577.010." Op. at 191. Having the engine of a car running and then manipulating the engine's ignition surely constitutes operation of a vehicle.

leges revoked for merely being in actual physical control of the vehicle.[13] Hence, our reading of the amendment does recognize a change in the statute and does not, as the dissent accuses us of doing, redefine the term "operates" so as to encompass "nearly every type of conduct previously included in the phrase 'actual physical control.'" Op. at 186.

We agree that our previous cases tended to emphasize "actual physical control" in cases involving a sleeping person. For example, in *State v. Dey,* 798 S.W.2d 210, 212 (Mo.App.1990), an intoxicated person was asleep behind the steering wheel of a parked vehicle with the engine running, and this court found that the individual was in actual physical control of the vehicle and was, therefore, "operating" a motor vehicle for the purposes of § 577.010.1. In reaching its conclusion, the court said, "[A] finding of actual physical control is not defeated by the fact that the driver is asleep." *Id.* at 212. The *Dey* court, however, did not consider whether the individual's actions would meet the "operating" part of the definition of § 577.001.1. The same is true for *State v. O'Toole,* 673 S.W.2d 25 (Mo. banc 1984); *State v. Hoyt,* 922 S.W.2d 443 (Mo.App.1996); and *State v. Hollis,* 800 S.W.2d 69 (Mo.App.1990).

■ While significantly changing the definition of "operating," which we discuss *infra,* the General Assembly's dropping "actual physical control" from its definition makes no difference in this particular case. This is because the evidence established that Cross was operating the motor vehicle.[14] Cross was not only in actual physical control of the motor vehicle, he was operating the vehicle.[15]

First, Cross' acts of being in a car with the engine running and then turning off the car's engine and headlights constituted operation of his car. Second, even if this were not the case, the state presented ample circumstantial evidence to establish that he started the car's engine and put it into operation. That operation was continuing when Officer Bowzer found him. That Cross was not causing the car to move—that it was parked—and that his legs were hanging out the door was of no consequence. He still was operating the car—that is, causing it to function. The state met its burden of showing beyond a reasonable doubt that Cross was operating the vehicle.

■ Of course, when the General Assembly amends a statute, we presume that it intended for the amendment to have some effect. *Wollard v. City of Kansas City,* 831 S.W.2d 200, 203 (Mo. banc 1992), *abrogation on other grounds recognized by Benton v. City of Rolla,* 872 S.W.2d 882 (Mo.App.1994). Our holding in this case does nothing to disregard that rule of statutory construction. By amending

13. If the court found, however, that the circumstantial evidence established that the individual drove or operated the vehicle, the individual's driving privileges could be revoked. *See* Baptist, 971 S.W.2d at 368.

14. We agree that, because of the amendment to § 577.001.1, a defendant can no longer be convicted for driving while intoxicated if he is merely in "actual physical control" of a vehicle. The dissent relies upon the "strong intimation" of the Supreme Court in *Lasley v. Director of Revenue,* 954 S.W.2d 327, 328–30 (1997), to suggest that we are ignoring the "legislature's clear intent" of the amendment. Op. at 186 and 187. In Lasley, the Supreme Court found that Jeffrey Lasley, who was preparing to back a truck from a driveway onto a city street and who had turned the truck's engine on and then off in the presence of the police officer, was "in control of his vehicle in a position to regulate its movement at the time he was arrested for driving while intoxicated." The court noted in a footnote that it was "arguable" that a different result might have been reached if Lasley's offense had taken place after the 1996 amendment to § 577.001.1. *Id.* at 330, note 3. This speculation, of course, was *dicta.* Of course, it is equally "arguable" that Lasley's acts of turning on and off the car's engine would constitute "operating a motor vehicle."

15. Although it is possible for a person to be in "actual physical control" of a vehicle but not operating it, Cross' case is not such a case. *See* Wilcox, 842 S.W.2d at 240.

§ 577.001.1, the legislature made clear that it no longer wanted to punish individuals if they were found intoxicated and in actual physical control of the vehicle but not operating or driving the vehicle.[16] The legislature, however, continued to want to punish individuals if the evidence established that they were driving or operating a vehicle in an intoxicated condition.

A drunken individual in the driver's seat of a motor vehicle with the engine running poses a danger to the driving public. Surely, this is just the reason why the General Assembly defined the terms "drive," "driving," "operates" or "operating" as "physically driving or operating a motor vehicle." Operating a vehicle has to mean something separate and distinct from driving a motor vehicle. The General Assembly by using the term "operates" has said that it wants intoxicated individuals to stop and think before they even get into their vehicles. The General Assembly is specifically telling those individuals to not even consider operating the vehicle if you are intoxicated.

Moreover, because the legislature in its prior version of § 577.001.1 defined "operating" as "physically driving or operating or being in actual physical control of a motor vehicle" and because it used the disjunctive "or" in the definition, the legislature necessarily intended for each of the alternatives set forth to have distinctive meanings. *State v. Wiles,* 26 S.W.3d 436, 440–41 (Mo.App.2000).[17] Indeed, courts on numerous occasions have recognized that "actual physical control" means something other than driving, *see, e.g., State v. Hughes,* 978 S.W.2d 24, 26 (Mo.App.1998); *Dey,* 798 S.W.2d at 212; therefore, necessarily, the General Assembly meant for "operating" to mean something other than driving.

Of course, "operating" overlays "driving."[18] For instance, an individual who drives a motor vehicle is also operating it and is in actual physical control of it. The activities described by the term "driving" would be included among the activities described by the term "operating," and the activities described by both of those terms would be included among the activities described by the term "actual physical control."[19] This diagram demonstrates the relationship of the three terms:

**16.** The dissent asserts that the legislature's amendment to § 577.001.1 "made a policy determination that a person could no longer be punished, either criminally or by denial of driving privileges, for simply being in control of a vehicle while in an intoxicated condition. The revision serves the legitimate purpose of encouraging individuals who are concerned that they might be impaired to get off the roadway and stop, thereby enhancing the safety of the driving public." Op. at 187. This is not a case of Cross' "simply being in control of a vehicle while in an intoxicated condition." An intoxicated Cross was in the driver's seat of a vehicle with the engine running, with headlights on, and with no one else in the vehicle. Moreover, when Cross was awakened by police officers, he immediately turned off the engine and headlights of the car and removed his keys. By keeping the term "operating" within the definition of § 577.001.1, the legislature made it abundantly clear that a person who is not driving but who is operating a vehicle in an intoxicated condition still a poses a danger to the driving public.

**17.** *See also* HARVEY M. COHEN AND JOSEPH B. GREEN, APPREHENDING AND PROSECUTING THE DRUNK DRIVER. A MANUAL FOR POLICE AND PROSECUTION § 10.01[1] (2000) ("The terms 'driving,' 'operating,' and 'being in physical control' are not synonymous.").

**18.** Indeed, the generally accepted view among the courts is the position taken by the Supreme Court of Delaware in *McDuell v. State,* 231 A.2d 265, 267 (1967): "The words 'operating' and 'driving' are not synonymous; they have well-recognized statutory distinctions. Of the two terms, the latter is generally accorded a more strict and limited meaning. The term 'driving' is generally used to mean, in this connection, steering and controlling a vehicle while in motion; the term 'operating,' on the other hand, is generally given a broader meaning to include starting the engine or manipulating the mechanical or electrical devices of a standing vehicle.... One may not drive a vehicle without operating it; but one may operate the engine or devices of a vehicle without driving it."

**19.** In *Wilcox,* 842 S.W.2d at 242, this court said, "Section 577.001.1, RSMo 1986, defines

All of the acts that would constitute driving and operating would constitute actual physical control. The General Assembly removed from the definition those acts of actual physical control that did not constitute operating or driving. Thus, previous courts' seizing upon the "actual physical control" portion of § 577.001.1's definition should not prohibit us from giving full meaning to the terms "driving" and "operating" that remain in the statute.[20] Our conclusion does not rest on Cross' being in actual physical control of the motor vehicle but on evidence that established Cross' operation of the motor vehicle.

Cross also complains that the evidence did not establish that he was intoxicated at the time he was operating the vehicle. In support of his contention he relies on *State v. Liebhart*, 707 S.W.2d 427, 429 (Mo.App. 1986), *superseded by statute on other grounds as stated in State v. Wiles*, 26 S.W.3d 436 (Mo.App.2000), in which the court noted:

There was a single set of tire tracks leading from the highway to the accident vehicle and appellant was sitting in the driver's seat with the keys attempting to start the vehicle. There was damage to a fence and a mailbox along the accident route, as well as to the vehicle itself and appellant had sustained injuries. When the trooper arrived, there were no other vehicles or persons present nor was there any evidence that such others had

'driving' as 'physically driving or operating or being in actual physical control of a motor vehicle.' Of the various definitions, the lowest common denominator is 'actual physical control' because physical control is a necessary prelude to operating a motor vehicle."

**20.** This court's Southern District recently handed down an opinion in which it held that driving and operating were not synonymous. *State v. Wiles*, 26 S.W.3d 436 (2000). The court noted that previous cases involving a sleeping person behind the steering wheel of a running vehicle seized upon the "actual physical control" language of the previous version of § 577.001.1. *Id.* at 439–40. The court correctly pointed out that the cases did not explain what actions fell within the definition of "operate" because in each case "it was sufficient that the defendant had 'actual physical control,' regardless of whether he or she succeeded in using that control to operate the

vehicle." *Id.* The court went on to note that the "cases finding a lack of 'actual physical control' do not explain the term 'operate' because in each case the most obvious manifestation that a vehicle was 'operating' was missing as the vehicle was not running." *Id.* at 440 The Wiles court concluded that a sleeping individual behind the steering wheel of a parked truck with the engine running and the headlights and taillights on and with his feet on the brake and accelerator was operating a vehicle within the meaning of §§ 577.010.1 and 577.001.1. *Id.* at 441. The court concluded that the defendant was "engaging the machinery of his vehicle and was in a position to manipulate its movement." *Id.* Cross, after being awakened by the officers, was in a position to manipulate the vehicle's movement and was engaging the machinery of his vehicle by turning off the vehicle's engine.

been present on the scene prior to his arrival.

*Id.* at 429. The court found that although the evidence established that the defendant was operating the vehicle at the time of the accident, that he was intoxicated when the officer arrived, and that he had no access to intoxicating beverages after that time, the state failed to prove that the defendant was intoxicated at the time he was operating the vehicle. *Id.*

Unlike *Liebhart,* Cross was operating the vehicle when Macon police officers arrived. Siecinski arrived shortly thereafter and concluded that Cross was intoxicated. Sufficient evidence established that Cross was intoxicated at the time he was operating the vehicle.

In his next point, Cross asserts that the circuit court erred in finding him guilty of violating § 577.010.1 because Macon police officers illegally arrested him. He argues that the officers were outside their jurisdiction when they seized his keys and held him until a Highway Patrol trooper arrived. Indeed, " 'seizure of the person' under Fourth Amendment jurisprudence requires either the application of physical force, however slight, or where force is absent, submission to an officer's 'show of authority' to restrain the subject's liberty." *State v. Shahid,* 813 S.W.2d 38, 40 (Mo.App.1991) (citing *California v. Hodari,* 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991)).

The evidence established that Cross submitted to the Macon officer's show of authority. When Cross attempted to get out of his vehicle, a Macon officer told him to stay in the car and took the car's key from him. Bowzer testified that they "took the keys from [Cross] to permit [sic] . . . him from leaving the scene until the trooper arrived." Clearly, Cross was not free to leave, and his liberty had been restrained. Cross was, in effect, under arrest.

The Macon police did not formally arrest Cross because they knew that they were outside their jurisdiction. Indeed, when a law enforcement officer leaves his territorial jurisdiction, his status is the same as a private citizen's. *State v. Devlin,* 745 S.W.2d 850, 851 (Mo.App. 1988); *Settle v. State,* 679 S.W.2d 310, 317 (Mo.App.1984), *cert. denied,* 472 U.S. 1007, 105 S.Ct. 2701, 86 L.Ed.2d 717 (1985). "A private citizen may arrest on a showing of the commission of a felony and reasonable grounds to suspect the arrested party, to prevent an affray or breach of the peace, and for a misdemeanor if authorized by statute." *Devlin,* 745 S.W.2d at 851–52 (citing *Settle,* 679 S.W.2d at 317–18). This court's Southern District has held that a private person lacks authority to arrest an individual for the Class B misdemeanor of driving while intoxicated. *Forste v. Benton,* 792 S.W.2d 910, 915 (Mo.App.1990). The Macon officers, therefore, had no authority to arrest Cross.

Cross did not seek to suppress the officer's testimony before trial, and he did not object to it at trial on constitutional grounds.[21] "As a general rule, a constitutional claim must be raised at the earliest opportunity and preserved at each stage of the judicial process." *State v. Blankenship,* 830 S.W.2d 1, 12 (Mo. banc 1992). Cross' contention on appeal—that his unlawful arrest rendered the officers' testi-

---

**21.** Cross objected when the state asked Siecinski, "[W]hat was the odor that you smelled?" Cross said, "I'm going to object at this point, your Honor. The arrest would have been illegal because it was effected by the Macon city police, who had no legal authority to make such an arrest, and arrest occurred at the time they took the keys from the Defendant. Anything resulting from an illegal detention, seizure of the Defendant would be illegal." The circuit court overruled his objection. This was the only question which Cross objected to on these grounds. Moreover, Siecinski's testimony regarding Cross' intoxication was based on his own observations—not on the Macon officers' observations. *See State v. Neher,* 726 S.W.2d 362, 364 (Mo.App.), *cert. denied,* 484 U.S. 848, 108 S.Ct. 146, 98 L.Ed.2d 102 (1987).

mony inadmissible as "fruit of the poisonous tree"—comes too late.

■ Moreover, that Macon officers acted outside their jurisdiction does not preclude them from testifying about what they observed. *State v. Overby*, 432 S.W.2d 277, 279 (Mo.1968). "The validity or invalidity of the arrest, at the most, would affect the validity of a search in connection with the arrest." *Id.* (applying U.S. CONST., amends. IV and XIV, and Mo. CONST., Art. I, § 15 (1945)).

■ In his final point, Cross contends that the circuit court erred in admitting evidence of the breathalyzer test results. He objected to the results on the grounds of hearsay and "[i]mproper foundation." We agree that the circuit court erred in not sustaining his objections, but we do not discern any prejudice to Cross. Section 577.010.1 requires proof only that a defendant "operate[d] a motor vehicle while in an intoxicated or drugged condition." It does not require a showing of any level of intoxication. This court's Southern District observed:

"[T]he state is *not* required to produce results of chemical tests to prove intoxication." *State v. Ruark*, 720 S.W.2d 453, 454 (Mo.App.1986). " 'Intoxication' is a 'physical condition' usually evidenced by unsteadiness on the feet, slurring of speech, lack of body coordination and an impairment of motor reflexes." *Id.; see also [State v.] Maggard*, 906 S.W.2d [845,] 849 [(Mo.App.1995)]. "Whether a defendant is intoxicated may be proven by any witness who had a reasonable opportunity to observe him." *Maggard*, 906 S.W.2d at 849.[22]

*State v. Teaster*, 962 S.W.2d 429, 431 (Mo. App.1998). Trooper Siecinski's observations were sufficient to establish Cross' violation of § 577.010.1 beyond a reasonable doubt.

We affirm the circuit court's judgment.

22. The emphasis was in the original.

LOWENSTEIN, Judge, BRECKENRIDGE, Judge, SMART, Judge, EDWIN H. SMITH, Judge, and WILLIAM E. TURNAGE, Senior Judge, concur.

ELLIS, Judge, dissents in separate opinion. LAURA DENVIR STITH, Judge, HOWARD, Judge, NEWTON, Judge and HOLLIGER concur in the dissenting opinion.

ELLIS, Judge, dissenting.

I respectfully dissent.

"A person commits the crime of **'driving while intoxicated'** if he operates a motor vehicle while in an intoxicated or drugged condition." § 577.010.1, RSMo (1994) (emphasis in original). Section 577.001.1, RSMo (1994), defined "operates" as used in the statute to mean, "physically driving or operating or being in actual physical control of a motor vehicle." In 1996, the Legislature amended the definition of "operates" in § 577.001.1 to read, "physically driving or operating a motor vehicle." § 577.001.1, RSMo Cum.Supp. (1999). The amendment deleted the phrase "or being in actual physical control of" the motor vehicle from the definition. Thus, it was incumbent on the state to prove beyond a reasonable doubt that Cross (a) was "physically driving or operating a motor vehicle" and (b) that he did so "while in an intoxicated … condition."

When the Legislature amends a statute, it is presumed that the Legislature intended to effect some change in the existing law. *Wollard v. City of Kansas City*, 831 S.W.2d 200, 203 (Mo. banc 1992); *Bennett v. Director of Revenue*, 889 S.W.2d 166, 169 (Mo.App. W.D.1994). To amend a statute and accomplish nothing from the amendment would be a meaningless act. *Kilbane v. Director of Dept. of Revenue*, 544 S.W.2d 9, 11 (Mo. banc 1976). A statute should "never be construed in a manner which results in the mooting of the legislative changes since the legislature is

never presumed to have committed a useless act." *State v. Harris,* 705 S.W.2d 544, 548 (Mo.App. E.D.1986).

While the majority acknowledges that § 577.001.1 was amended in 1996 to delete being in "actual physical control" of a motor vehicle as a basis for a finding of driving while intoxicated, it then moots this specifically enacted legislative change by redefining "operates" to include being in actual physical control of a running automobile, thereby encompassing nearly every type of conduct previously included in the phrase "actual physical control." In so doing, it necessarily distorts the legislature's clear intent in amending the statute. Further, as discussed *infra*, its interpretation of § 577.001.1 is at odds with the teaching of *Baptist v. Lohman,* 971 S.W.2d 366 (Mo.App. E.D.1998), and the strong intimation of our Supreme Court in *Lasley v. Director of Revenue,* 954 S.W.2d 327 (Mo. banc 1997) that merely being in physical control of a running automobile is inadequate to constitute operating a motor vehicle. For all these reasons, I dissent.

In order to more fully understand the meaning and intent of the legislature's deletion of the phrase "actual physical control" form the statute, it is helpful to review how the statute was interpreted prior to the amendment.

Missouri courts have defined "actual physical control" to mean a domination or regulation of a vehicle, and it exists as long as the person is keeping the vehicle restrained or is in the position to regulate its movements and the vehicle is running. *State v. Hoyt,* 922 S.W.2d 443, 447–48 (Mo. App. W.D.1996); *State v. Dey,* 798 S.W.2d 210, 212 (Mo.App. W.D.1990). " '[A]ctual physical control' of a vehicle simply means to be in a position to regulate the movements of a vehicle which has its engine running." *Dey,* 798 S.W.2d at 212. Missouri courts have consistently upheld driving while intoxicated (DWI) convictions and license revocations and suspensions where the defendant or licensee is sitting in a motionless vehicle with the engine running solely under the theory that the person was in "actual physical control" of the vehicle as that phrase is used in § 577.001.1 RSMo (1994). *Hoyt,* 922 S.W.2d at 448; *Chinnery v. Director of Revenue,* 885 S.W.2d 50, 52–53 (Mo.App. W.D.1994); *State v. Hollis,* 800 S.W.2d 69, 71 (Mo.App. S.D.1990); *See also Krienke v. Lohman,* 963 S.W.2d 11, 12 (Mo.App. W.D.1998); *Gleason v. Director of Revenue,* 859 S.W.2d 189, 190–91 (Mo.App. W.D.1993). Moreover, our courts have repeatedly used the phrase "actual physical control" as used in § 577.001.1, RSMo (1994), to justify upholding DWI convictions or license suspensions and revocations when a person is found sleeping or passed out in the vehicle while the motor is running. *State v. O'Toole,* 673 S.W.2d 25, 27 (Mo. banc 1984); *Hoyt,* 922 S.W.2d at 448, *Chinnery,* 885 S.W.2d at 52, *Stoltz v. Director of Revenue,* 816 S.W.2d 711, 714 (Mo.App. W.D.1991); *Dey,* 798 S.W.2d at 212; *State v. Nickerson,* 763 S.W.2d 716, 717 (Mo.App. E.D.1989); *Taylor v. McNeill,* 714 S.W.2d 947, 948 (Mo.App. W.D.1986). Indeed, this court has gone so far as to uphold a license revocation on the theory of "actual physical control" where the defendant was found asleep or passed out in his car with the keys in the ignition even though the engine was not running. *Wilcox v. Director of Revenue,* 842 S.W.2d 240, 243–44 (Mo.App. W.D.1992).

The Legislature is presumed to have acted with full awareness and complete knowledge of the present state of the law, including judicial and legislative precedent. *State v. Rumble,* 680 S.W.2d 939, 942 (Mo. banc 1984); *Harris,* 705 S.W.2d at 548. Thus, when § 577.001.1 was amended in 1996, the Legislature was aware that Missouri's appellate courts were routinely affirming DWI convictions and license suspensions and revocations where the defendant or licensee was sitting in a motionless vehicle, in some instances even when the engine was not running, relying on the "actual physical control" language in § 577.001.1.

The legislative power of the State of Missouri is vested in the General Assembly. *Mo. Const. Art. III, § 1.* "And, unless otherwise restricted by the state constitution, this power 'is unlimited and practically absolute.'" *Opponents of Prison Site, Inc. v. Carnahan,* 994 S.W.2d 573, 577 (Mo.App. W.D.1999) (*quoting State ex rel. Farmers' Elec. Coop., Inc. v. State Environmental Improvement Auth.,* 518 S.W.2d 68, 72 (Mo. banc 1975)). Accordingly, it is the right, and indeed the constitutional duty, of the General Assembly to determine what acts and conduct shall constitute crimes, or be otherwise sanctioned, such as by denial of driving privileges. By amending § 577.001.1 to exclude "actual physical control" from the definition of driving, it is crystal clear the General Assembly intended to, and did in fact, effect a change in the statute. It made a policy determination that a person could no longer be punished, either criminally or by denial of driving privileges, for simply being in control of a vehicle while in an intoxicated condition. The revision serves the legitimate purpose of encouraging individuals who are concerned that they might be impaired to get off the roadway and stop, thereby enhancing the safety of the driving public.

Moreover, our courts have acknowledged that the deletion of "actual physical control" from the statute changed the meaning of the statute. In *Baptist v. Lohman,* 971 S.W.2d 366 (Mo.App. E.D.1998), the Eastern District of this court declared that the amendment made in 1996 means that "a motorist may no longer be found to be driving while intoxicated merely because he is in 'control' of a running automobile...." *Id.* at 368. Also, our Supreme Court acknowledged the legislative amendment in *Lasley v. Director of Revenue,* 954 S.W.2d 327 (Mo. banc 1997), when it stated:

> It is arguable that a different result might be reached had the suspension of respondent's driver's license been based on conduct occurring after August 28, 1996. The definition of "driving" in section 577.001 on which *Hines [v. Director of Revenue,* 916 S.W.2d 884 (Mo.App. 1996)] and *Chinnery* relied has been changed. The statute was amended in 1996 to define "drive", "driving", "operates" or "operating" to mean "physically driving or operating a motor vehicle." Section 577.001.1, RSMo Supp.1996. At the time respondent was arrested the section 577.001.1 definition was "physically driving or operating *or being in actual physical control of a motor vehicle.*"

*Id.* at 330, n. 3 (emphasis in original).

Based on the foregoing, it is abundantly clear that the Legislature intended to, and did in fact, effect a significant change in the law with the amendment of § 577.001.1 in 1996. Nonetheless, the majority rules otherwise by adopting an expansive definition of the term "operating" that effectively incorporates the concept of "actual physical control."

"Some crude idea of the profusion of judicial views upon the general subject here involved may be drawn from the fact that 50 entries containing a definition of the phrase 'operate a motor vehicle' are listed in 29A *Words and Phrases* at 396–400 (1972)." *Wombles v. General American Life Ins. Co.,* 541 S.W.2d 45, 47 (Mo. App. S.D.1976). "A frequent prelude to opinions attempting to define the phrase 'operate a motor vehicle' is the statement that the word 'operate' has varying meanings according to context which primarily determines its meaning." *Id.* In the case at bar, the majority attempts to apply a definition of "operating" that cannot be deemed applicable to the context of § 577.010.

The majority uses a definition of "operating" found in *Teters v. Kansas City Public Service Co.,* 300 S.W.2d 511 (Mo.1957). *Teters* was a tort case dealing with the application of § 304.010 which generally provides that every person operating a motor vehicle on the highways shall exercise the highest degree of care. In that

case, the owner of a truck parked on the street went out to his truck to retrieve some merchandise from the back of the truck. While he was opening the doors of the back compartment, a bus ran into his truck. The *Teters* Court used an expansive definition of the term to hold that, in the context of § 304.010, the truck owner was "operating" his truck at the time of the collision and was obligated to exercise the highest degree of care in the course of this operation. *Id.* at 516.

The *Teters* Court specifically noted that cases interpreting "operating" or "driving" in the context of other statutory traffic regulations were not applicable to interpreting its meaning under § 304.010. *Id.* at 517. Thus, the Court acknowledged that the terms "driving" and "operating" have different meanings when used in other statutes, thereby confirming that it was confining its broad definition of those terms to § 304.010 and that it did not intend for this definition to be applied in the interpretation of other statutes.

Furthermore, *Gibbs v. National General Ins. Co.*, 938 S.W.2d 600 (Mo.App. S.D. 1997), which the majority relies on for the proposition that Missouri courts "have repeatedly construed 'operator' broadly" under Chapters 304 and 577, examines numerous different definitions for "operating" which have been provided for under various statutory chapters. *Id.* at 603–604.[1] After reviewing the various definitions applied under the different chapters, *Gibbs* concluded that "the key to operation of a motor vehicle in Missouri is actual physical control." *Id.* at 604. However, the Legislature specifically amended § 577.001.1 so that "actual physical control," the "key" to the defini-

tions considered in *Gibbs*, no longer constitutes "operating" under Chapter 577. Accordingly, this change to the statute has rendered the definitions examined in *Gibbs* inapplicable to the current statute.

While I agree that being in actual physical control is a presrequisite to operating a motor vehicle, I do *not* agree that these two terms overlap so much as to be, in practical effect, synonymous. The majority purports to recognize that these terms have different meanings and that operating is merely a subset of actual physical control, as is driving. But in fact it then defines operating as actual physical control was previously defined, by stating that one can be found to be operating a vehicle if one is found in actual physical control of a running vehicle. This is, of course, exactly what is required in order to show actual physical control by most cases, since if a vehicle is not running then whether those in it are intoxicated is irrelevant.

This is evident when the majority states that it has "no difficulty concluding ... that the state presented sufficient evidence to establish [Cross'] guilt beyond a reasonable doubt." *Maj. Op. at 180.* In reaching this conclusion, the majority relies on two separate theories: 1) that the state's circumstantial evidence was sufficient to prove that Cross operated the vehicle, and 2) that the direct evidence establishes that Cross operated the car by turning off the car's engine and headlights.

The majority points to the following circumstantial evidence to support its conclusion: (1) Cross was "in the driver seat lying across the front seats with the engine running;" and (2) "[n]o one else was in the vehicle." *Id.* The majority contends that

---

1. *Gibbs* relied largely on *Hay v. Ham,* 364 S.W.2d 118 (Mo.App.1962), in analyzing what constitutes operating a motor vehicle under Chapters 304. *Hay* addressed the fact that multiple definitions of the term "operate" have been utilized in various cases and treatises. *Id.* at 122. *Hay* involved a passenger in a vehicle that was parked and left running outside a store. *Id.* at 120. When the passenger scooted over to allow another passenger to get into the car, the passenger accidentally touched the accelerator, causing the vehicle to move forward and crash into the store. *Id.* The court concluded that the passenger's act of touching the accelerator was an act necessary to be performed in the movement of the vehicle from one place to another and placed her in actual physical control of the vehicle, rendering her the "operator" of the vehicle. *Id.* at 122–23.

this circumstantial evidence "was sufficient for a fact finder reasonably to conclude that he had turned on the car's engine." *Maj. Op. at 180.* I submit that such evidence is wholly inadequate to prove beyond a reasonable doubt that Cross turned on the car's engine and that he was intoxicated at the time. While there was no one else in the car when the officers arrived, there was no evidence whatsoever regarding whether other people were near the car or in the vicinity. There was no evidence as to who owned the car, or how long it had sat at the location. While someone obviously had to drive the car to its location, and while a fact finder might draw the inference that it was Cross, there is no evidence as to whether he was intoxicated when it was driven there. There was evidence of the presence of beer cans in the car, indicating that some alcohol may have been consumed after the vehicle was stopped by the side of the road. I respectfully suggest that the majority's assertion that the circumstantial evidence was sufficient to permit a reasonable juror to find that Cross turned on the car's engine while in an intoxicated condition is flawed logic (going from a to d without regard to b and c) and erroneous as a matter of law. Moreover, if there is to be any distinction between operating a vehicle and being in actual physical control of it, the mere act of being in control of a running car would not be sufficient to constitute "operating" the car under the current statutory language and the applicable case law.

In apparent recognition of this problem, the majority latches onto the fact that Cross turned off the engine and headlights and contends that this is sufficient direct evidence to constitute "operating the car."[2] *Id.* I reject the notion that such conduct, which occurred solely in response to the police presence, amounts to "physically driving or operating a motor vehicle," § 577.001.1, RSMo Cum.Supp. (1999), even under the view adopted by the Southern District of this court in *State v. Wiles,* 26 S.W.3d 436 (Mo.App. S.D.2000), on which the majority also relies. In doing so, the majority asserts that the change in § 577.001.1 should not prohibit it "from giving full meaning to the terms 'driving' and 'operating' that remain in the statute." *Maj. Op. at 180.* Accordingly, it is appropriate to review *Wiles* in some detail.

In *Wiles,* a Webb City Police Officer responded to a report of a loud vehicle idling in a residential area. *Wiles,* 26 S.W.3d at 438. When he arrived at the scene, he found a pick-up truck parked at an angle facing a dumpster with the engine running at a fast idle. *Id.* The vehicle's headlights, taillights and brake lights were all on. *Id.* The officer then observed the defendant inside the truck, slumped over the steering wheel, with his left foot on the brake pedal, right foot on the accelerator and the vehicle in park. *Id.* After defendant failed to respond to the officer's knock on the window, the officer opened the driver's side door whereupon, after almost falling out of the vehicle, the defendant had to be assisted back into an upright position. *Wiles,* 26 S.W.3d at 438. The officer smelled a strong odor of intoxicants and observed an open container of whiskey, an open container of beer and several unopened containers of beer. *Id.* at 438–39. The defendant failed three sobriety tests and was arrested for driving

---

**2.** This evidence must also be put in perspective. Cross was asleep in the vehicle. Officer Bowzer's testimony was the only evidence regarding this conduct. He testified, on direct examination, as follows: "[Cross] awoke to *loud verbal commands* from Officer Toal and also *physical stimulation.* [He] was *alarmed by a presence.* And [he] then shut off the headlights to the vehicle, turned off the ignition and removed the keys from the ignition." (Emphasis added). Later, but still on direct examination, in prefacing his testimony that Officer Toal advised Cross to remain in the vehicle and took the keys from him, Officer Bowzer again testified that Cross "was alarmed by our presence." Thus, Cross was awakened by "loud verbal commands" and "physical stimulation." He was startled and alarmed to see three police officers standing over him.

while intoxicated. *Id.* at 439. He was subsequently charged with Class D felony driving while intoxicated and was found guilty by a jury. *Id.*

On appeal, the defendant argued that the state failed to prove that he was "physically driving or operating" a motor vehicle while intoxicated as required by § 577.001.1. *Id.* The defendant conceded that under the prior version of the statute, the evidence would have been sufficient to convict him of driving while intoxicated because he was "in actual physical control of a motor vehicle" but contended that since the 1996 amendment of the statute, this was no longer sufficient. *Wiles*, 26 S.W.3d at 439.

In analyzing defendant's contention, the Southern District noted that, prior to the statute's amendment, cases held that there was sufficient evidence to support a conviction for driving while intoxicated where a defendant was found asleep behind the wheel with the engine running and the lights on, even though the vehicle was in park, on the theory that the defendant was in a position to regulate the vehicle's movement. *Id.* The court suggested that these cases did not explain what actions might constitute "operating" a motor vehicle because it was sufficient that the defendant had "actual physical control." *Id.* The court further asserted that those cases finding a lack of "actual physical control" did not identify what constituted operating

because "the most obvious manifestation that a vehicle was 'operating' was missing as the vehicle was not running." *Id.* at 440. Therefore, the court went on to construe the statute, holding that the terms "driving" and "operating" have distinct meanings. *Id.* at 440–41.

In doing so, the Southern District reviewed *State v. Ducatt,* 22 Conn.App. 88, 575 A.2d 708 (1990), *Flournoy v. State,* 106 Ga.App. 756, 128 S.E.2d 528 (1962), and *Commonwealth v. Plowman,* 28 Mass.App. Ct. 230, 548 N.E.2d 1278 (1990), each of which defined "operates" or "operating."[3] *Wiles*, 26 S.W.3d at 440–41. It is fair to say they generally defined "operating" a motor vehicle very broadly, as when a person is in a vehicle and in a position to control its movements and intentionally performs acts that, alone or in combination, will set in motion the motive power of the vehicle. *Id.* After discussing these cases, the *Wiles* court then held that the defendant's actions in that case did not constitute "physically driving" because the vehicle was not in motion, but "they did fall under the broader term of 'operating' as defined in the aforementioned authorities." *Id.* at 441.

In my view, the *Wiles* opinion is somewhat troubling in that it appears to adopt the rationale found in the non-Missouri cases it cites, which have no separate concept of actual physical control.[4] But that

---

3. "[A]n individual 'operates a motor vehicle ... when ... in the vehicle and in a position to control its movements, he manipulates, for any purpose, the machinery of the motor or any other machinery manipulable from the driver's position that affects or could affect the vehicle's movement, whether [the individual] moves the vehicle or not.'" *Wiles*, 26 S.W.3d at 440 (*quoting State v. Ducatt,* 22 Conn.App. 88, 575 A.2d 708–710 (1990)). "[T]he word 'operate' has a broader meaning so as to include not only the motion of the vehicle but also acts which engage the machinery of the vehicle that, alone or in sequence, will set in motion the motive power of the vehicle." *Wiles*, 26 S.W.3d at 441 (*quoting Flournoy v. State,* 106 Ga.App. 756, 128 S.E.2d 528, 530 (1962)). "'[A] person operates a motor vehicle ... when, in the

vehicle, he intentionally does any act or makes use of any mechanical or electrical agency which alone or in sequence will set in motion the motive power of that vehicle.'" *Wiles*, 26 S.W.3d at 441 (*quoting Commonwealth v. Plowman,* 28 Mass.App.Ct. 230, 548 N.E.2d 1278, 1280 (1990) (*quoting Commonwealth v. Uski,* 263 Mass. 22, 160 N.E. 305 (1928))).

4. The Connecticut, Georgia and Massachusetts courts did not have the statutory and judicial history of "actual physical control" being part and parcel of driving while intoxicated cases, as we do in Missouri. Moreover, the *Wiles* court and the majority here both seemingly overlook the fact that the 1996 amendment to § 577.001.1 removes the "actual physical control" language from the defi-

issue need not be addressed here because Cross' conduct would not come within the definitions utilized in those cases anyway.

As noted, the cases discussed in *Wiles* generally require a person (a) to be within a vehicle and able to control its movements, and that such person (b) perform acts that, alone or in combination, will set in motion the motive power of the vehicle. In this case, Cross was only half in the vehicle and would not have been able to utilize the accelerator or brake, so it is at least arguable that he was not within the vehicle and able to control its movements. More importantly, however, in thinking about the evil the General Assembly was trying to address when it enacted our statutes relating to driving while intoxicated, it is clear that it was trying to prevent people from driving on our highways in an intoxicated condition, and to punish those who do. With this in mind, even if we accept the broad definition of *Wiles*, the manipulation of the ignition key to *turn off* the engine is not performing an act that, alone or in combination, will. set in motion the motive power of the vehicle.

Contrary to the assertion of the majority, an individual does not "engage" the engine of an automobile by turning it off, and in fact, such an individual is doing exactly the opposite. If turning off the engine were sufficient to constitute "operating" the motor vehicle, it would of necessity mean that turning on the electrical system to listen to the radio is also "operating" the vehicle. A passenger might well do that while waiting in a car for the driver and, if intoxicated, under the majority's theory, could be found guilty of driving while intoxicated. It is totally illogical and inconsistent with the intent of the Legislature to suggest that the manipulation of a device on a vehicle for the purpose of preventing it from being driven, or for a purpose other than to engage the motive power of the vehicle, constitutes driving while intoxicated in violation of § 577.010. Clearly such is not the type of

conduct the Legislature intended to punish. Rather, the purpose of the legislation is to prevent drunk driving, and that purpose must be borne in mind in determining what is meant by the term "operates."

The majority in this case, while claiming just the opposite, effectively incorporates "actual physical control" into its definition of "operating." It holds that *turning off* the engine and headlights, when awakened by three uniformed police officers shouting loud verbal commands and using "physical stimulation," when not fully within the vehicle, is now "operating" a vehicle sufficiently to permit a conviction pursuant to § 577.010. This goes far beyond the facts in *Wiles*, where there was evidence that the defendant was seated in the driver's seat, his entire body within the vehicle, slumped over the wheel, with his right foot on the accelerator causing the engine to run at a fast idle, and his left foot was on the brake pedal, resulting in the illumination of the brake lights. *Wiles*, 26 S.W.3d at 438. Unlike the present case, these circumstances existed when the officer first observed Wiles and did not occur as a result of his arrival. Moreover, not only did this evidence exist in *Wiles*, the court specifically relied on it in holding that there was sufficient evidence to permit a reasonable juror to find the defendant guilty. The court stated: *"Under this set of facts,* the trial court did not err in overruling Defendant's motion for judgment of acquittal and in sentencing him for 'operating' a motor vehicle while intoxicated in violation of § 577.010...." *Id.* at 441 (emphasis added).

The Judiciary's duty is not to write or re-write statutes. Rather, our function and duty when interpreting new statutory language is to give effect to the intent of the Legislature. *Harris,* 705 S.W.2d at 548. We ascertain that intent from the language used in the statute. *Baumruk v. Belt,* 964 S.W.2d 443, 446 (Mo. banc 1998); *State v. Moriarty,* 914 S.W.2d 416, 422–23

nition of "operating" as well as the definition of "driving" as that section defines both.

(Mo.App. W.D.1996). The Legislature is presumed to have acted with a full awareness and complete knowledge of the present state of the law, including judicial and legislative precedent. *Rumble,* 680 S.W.2d at 942; *Harris,* 705 S.W.2d at 548. Finally, a statute should "never be construed in a manner which results in the mooting of the legislative changes since the legislature is never presumed to have committed a useless act." *Harris,* 705 S.W.2d at 548.

The majority disregards the foregoing rules, and others, and erroneously holds that when the Legislature amends a statute by deleting a phrase there is no change in the application of the statute. When the Legislature amends a statute, it is presumed that the Legislature intended to effect some change in the existing law. *Wollard,* 831 S.W.2d at 203; *Bennett,* 889 S.W.2d at 169. To amend a statute and accomplish nothing from the amendment would be a meaningless act. *Kilbane,* 544 S.W.2d at 11. The Legislature had no reason to amend § 577.001.1 if it did not intend to change the application of the statute. Moreover, the majority does not and cannot explain why the Legislature would delete a phrase from the statute if it intended to allow courts to analyze cases as if that definitional phrase was still part of the statute.

As noted previously, the Legislature made a policy determination when it amended § 577.001.1 that a person could no longer be punished, either criminally or by denial of driving privileges, for simply being within a vehicle, with or without the engine running, in an intoxicated condition. The revision serves legitimate public purposes. Thus, the Legislature was not engaging in a useless and meaningless act when it amended § 577.001.1 as the majority holds. It intended to, and did in fact, change the law. In doing so, it was exercising the constitutionally mandated *Legislative* prerogative of changing the law embodied in a statute, a prerogative not granted to the *Judiciary.*

In the instant case, Cross was found partially within a vehicle, with its headlights on and the engine running. The driver's side door was open. Cross was asleep, with his feet on the ground, his legs outside the vehicle, and his torso lying across the front seat. There was no one else inside the car but there was no evidence as to whether other persons were near the vehicle. While these facts would justify a finding of "actual physical control" of the vehicle under the old definition of "operates" and the case law construing it, they do not establish he was "physically driving or operating a motor vehicle" under the amended version of § 577.001.1.

For the foregoing reasons, I would reverse the trial court's judgment.

LAURA DENVIR STITH, HOWARD, NEWTON, and HOLLIGER, JJ., concur in the dissenting opinion.