**Robert W. STOLTZ, Respondent,**

v.

**DIRECTOR OF REVENUE, Appellant.**

**No. WD 44206.**

Missouri Court of Appeals, Western District.

Oct. 22, 1991.

William L. Webster, Atty. Gen., Jatha B. Sadowski, Sp. Asst. Atty. Gen., Mo. Dept. of Revenue, Jefferson City, for appellant.

Charles M. McKeon, Bortnick, Komoroski & McKeon, Kansas City, for respondent.

Before TURNAGE, P.J., and KENNEDY and BRECKENRIDGE, JJ.

PER CURIAM:

Robert W. Stoltz was arrested for the violation of Kansas City, Missouri Ordinance § 34.116(b), which makes it unlawful, "for any person who is under the influence of intoxicating liquor to be in a position to physically handle the driving mechanism of any vehicle within the city." His license to drive was suspended pursuant to Missouri's Suspension and Revocation, Administrative Procedure Law §§ 302.500–302.-540, RSMo 1986. After a trial *de novo,* the circuit court ordered his license reinstated. The Director of Revenue appeals the reinstatement. The judgment is reversed.

The facts, in the light most favorable to the verdict, *Miller v. Director of Revenue,* 719 S.W.2d 787, 789 (Mo. banc 1986), and as found by the trial court, are as follows:

On the evening of March 23, 1990, Stoltz was driving southbound on Grandview Road at Blue River Road when he had a flat tire. He pulled his car past a bridge and over as far as he could into a "pull-over area" on the shoulder of the road. The weather was cold and snowy. The car became stuck there at the side of the road. Stoltz's spare tire was flat, so he decided to hitch a ride to a local tavern to see if he could find anybody who had an extra spare tire and would come back with him to help.

Because the weather was bad, there were few people in the bar. Nobody seemed interested in helping, Stoltz testified, so he "got to drinking and just blew it off." Eventually, one patron asked Stoltz if he'd like to go to another bar and play pool, and Stoltz said he would.

At the second bar, Stoltz ran into a woman he knew, Joleen Clanin. He told her that he'd buy breakfast if she'd take him

back to his car. Stoltz and Clanin stayed at the bar, drinking and playing pool, until 3:00 a.m. Then they got in Clanin's car and went to breakfast.

After breakfast, the two started back to Stoltz's car. They stopped at a convenience store to call a tow company, but because of the bad weather, the company said it might be a while before they'd pick him up. Clanin took Stoltz to his car and left him there. Stoltz got in his car and started the engine to keep warm while he waited for the tow truck.

Officer David Rae, responding to a radio call, went to the intersection of Grandview Road and Blue River Road. He observed a Chevrolet El Camino pickup truck parked on the north side of the intersection, in the southbound lane of traffic. Officer Rae found Stoltz behind the steering wheel, "slumped over, his head bent down, his chin resting on his chest, as if he might be either asleep or injured." After several attempts, the officer finally awakened Stoltz and asked him if he'd been drinking. Stoltz replied that he had six or eight beers. Stoltz attempted to perform some field sobriety tests, and he passed the "finger-to-nose" test, although he failed all the others. The officer then arrested Stoltz for being in position to physically handle the driving mechanism of a motor vehicle while intoxicated, a violation of Kansas City Ordinance 34.116(b).[1] A subsequent breathalyzer test given by Officer Carl Janssen revealed that Stoltz's blood alcohol content was .21%.[2]

Stoltz's driving privileges were suspended under §§ 302.500–302.540, RSMo 1986. An administrative hearing on the suspension was held and Stoltz's suspension was sustained. Stoltz petitioned for a trial de novo which was held on October 11, 1990. The trial court found in Stoltz's favor, reinstating his driving privileges. The Director appeals.

■ The judgment of the trial court must be sustained unless there is no sub-stantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or misapplies the law. *Domsch v. Director of Revenue*, 767 S.W.2d 121, 123 (Mo.App.1989). The trial court's judgment stated: "The Court having heard the evidence and arguments of counsel and being fully advised upon the law and the facts, the Court finds the issue in favor of the Petitioner and against the Director of Revenue." The trial judge made several findings on the record. He stated that he believed the officer as to where the car was located and that the vehicle was not incapable of being moved. He remarked: "We all know you can operate a car with a flat tire. It's not a very good idea if you value your automobile or whatever." A voluntary finding of the court which contradicts with recitals of judgment cannot be considered. *Jabin v. National Acc. Soc. of New York*, 226 Mo.App. 342, 41 S.W.2d 874, 878 (1931). Nothing in the trial court's written judgment contradicts the court's position and the court's findings can be considered.

■ The record also reflects confusion over the application of the law to the facts in this case. The trial court stated its belief, on the record, that a finding that Stoltz was actually operating the vehicle was required for the State to meet its burden. For the State to meet its burden of proof, under § 302.505, RSMo 1986, a finding of actual operation is not required. The trial court, therefore, imposed upon the Director a heavier burden than was legally required. Thus, the trial court erroneously declared and applied the law and its judgment cannot be sustained.

■ Correctly stated, the burden is upon the Director to establish that the arresting officer had probable cause to make the initial arrest and that the chemical analysis showed a blood alcohol content of at least .13%. *Domsch*, 767 S.W.2d at 123. Because the parties stipulated to the blood

---

1. A certified copy of the ordinance was admitted, and the parties stipulated that Officer Rae was "certified" within the ambit of § 590.110, R.S.Mo.1986.

2. The parties stipulated that the officer gave the test, that he was certified to give it, and that the results were .21% weight by volume.

alcohol content, the issue is whether the officer had probable cause to make the initial arrest.

"[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates,* 462 U.S. 213, 232, 103 S.Ct. 2317, 2329, 76 L.Ed.2d 527 (1983). Probable cause is evaluated in the context of whether the facts and circumstances would warrant a man of reasonable caution to believe that an offense has been or is being committed. *Brinegar v. United States,* 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1949). Specifically, the evaluation must be made, "in relation to the circumstances as they would have appeared to a prudent, cautious, and trained police officer." *United States v. Lopez,* 777 F.2d 543, 551 (10th Cir.1985).

In *Dalton v. McNeill,* 713 S.W.2d 26 (Mo.App.1986), this court thoroughly scrutinized an administrative suspension proceeding which involved a violation of Kansas City, Missouri ordinance, § 34.116(b), which prohibited the physical control of a motor vehicle by a person under the influence of intoxicating liquor. In *Dalton,* the driver was passed out behind the wheel of his car with the engine running, in a McDonald's drive through lane. *Id.* at 27. Dalton argued that the suspension procedures of §§ 302.500 to 302.540 do not apply to nonmoving violations, thus the probable cause requirement of § 302.505 was not satisfied. The court characterized this argument as a claim, "that a conviction for the physical control of a motor vehicle by a person, albeit intoxicated, cannot activate the suspension or revocation procedures of §§ 302.500 to 302.540 where the vehicle is not in motion." *Id.* at 28. The court rejected this argument, finding that the purpose of these sections was, "to deny the motor vehicle license privilege to a person arrested on probable cause [and later vali-

dated] of driving while intoxicated or *of the violation of an alcohol related offense in the proscribed condition of blood alcohol concentration,* and not to define substantive offenses." *Id.* (Emphasis added). The court noted that *it is the definition of the substantive offense which determines whether there was an arrest for probable cause. Id.*

■ The *Dalton* court reviewed terms found in the definitions of the substantive crimes of driving while intoxicated, § 577.-010, and driving with excessive blood alcohol content, § 577.012. *Id.* at 29. "Actual physical control" under the ordinance, as well as under the statutes occurs, even when the vehicle is motionless as long as a person keeps the vehicle in restraint and is in a position to regulate its movements. *Kansas City v. Troutner,* 544 S.W.2d 295, 300 (Mo.App.1976).[3] The wording of § 34.-116 has apparently been changed and now reads that the person, "be in a position to physically handle the driving mechanism of any vehicle...." The language is a further refinement of "actual physical control" and does not change the *Troutner* formulation.

Officer Rae found Stoltz in a position to physically handle the driving mechanism of the motor vehicle. Stoltz was in the driver's seat of the vehicle and its motor was running. The vehicle was in the roadway, in the southbound lane of traffic. In short, the circumstances as they would have appeared to a prudent, cautious and trained police officer, support the finding that the officer had probable cause to arrest Stoltz for the violation of the ordinance.

Stoltz alleges that this case can be distinguished from *Dalton* because the vehicle was inoperable, stuck in the snow with a flat tire and thus he was unable to regulate the movements of the vehicle. This distinction does not address how the circumstances would have appeared to Officer Rae. By Stoltz's own admission, he did not

---

**3.** The issue of actual physical control has been addressed in the context of a criminal proceeding in *State v. Dey,* 798 S.W.2d 210 (Mo.App. 1990). In *Dey,* the defendant was found asleep in a private parking lot behind the wheel of a pickup truck with the key in the ignition and the motor running. The court found that the defendant was in a position to regulate the movements of the vehicle. *Id.* at 212. No showing by the State was required, by direct or circumstantial proof, that the defendant intended to drive the vehicle.

tell Officer Rae that the vehicle was inoperable. Further, the argument ignores the trial court's finding that the vehicle was operable.

The judgment of the trial court is reversed and the cause remanded with directions for the trial court to affirm the suspension of Stoltz's license.