Ronald T. CHINNERY (Respondent),

v.

**DIRECTOR OF REVENUE, State of Missouri (Appellant).**

No. WD 48997.

Missouri Court of Appeals, Western District.

Oct. 25, 1994.

Jeremiah W. (Jay) Nixon, Atty. Gen., James A. Chenault, III, Sp. Asst. Atty. Gen., Mo. Dept. of Revenue, Jefferson City, for appellant.

Elizabeth Unger Carlyle, Lee's Summit, for respondent.

Before KENNEDY, P.J., and BRECKENRIDGE and SPINDEN, JJ.

PER CURIAM.

The Director of Revenue appeals the circuit court's order reinstating the driving privileges of Ronald T. Chinnery after they had been suspended pursuant to the administrative suspension and revocation provisions of sections 302.500–302.541, RSMo 1986, and Cum.Supp.1993. We reverse and remand.

On March 24, 1993, Officer Charles Harris and Officer Roy Cutsforth of the Independence Police Department responded to a dispatch reporting a "possible vehicular accident" in Independence. Officer Cutsforth

was the first officer to arrive at the scene. Upon arriving at the scene, Officer Cutsforth observed skid marks leading to a vehicle that had gone off the east side of the roadway and over an embankment and had come to rest at the edge of a creek bed. The officers did not know how long the car had been off the roadway and there was no visible damage to the car. The engine of the car was running and the rear wheels were spinning. Ronald Chinnery was behind the wheel of the car attempting to move the vehicle from its position. The officer approached the vehicle and asked Chinnery to shut off the engine and step out of the car. The officer detected the odor of alcohol on Chinnery's breath and noticed that his speech was slurred. He also observed that Chinnery's balance was impaired. Officer Cutsforth later testified that, in his opinion, Chinnery was intoxicated and it had impaired his driving ability. When Officer Harris arrived at the scene, he also observed Chinnery and later testified that he believed Chinnery was intoxicated. Chinnery was arrested and turned over to the DWI unit. A subsequent breathalyzer test revealed that Chinnery's blood alcohol content was .122%.[1]

Chinnery's driving privileges were suspended pursuant to sections 302.500–302.541.[2] An administrative hearing was held and Chinnery's suspension was affirmed. A trial de novo was held on December 9, 1993. The trial court found in favor of Chinnery and reinstated his driving privileges. The Director appeals.

■ This court must affirm the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or misapplies the law. *Stoltz v. Director of Revenue*, 816 S.W.2d 711, 713 (Mo.App.1991). In a license revocation proceeding, the Director has the burden to show, by a preponderance of the evidence, that the police had probable cause to arrest the petitioner for driving while intoxicated and that the petitioner's blood alcohol content was at least .10% at the time of arrest. *Buckley v. Director of Revenue*, 864 S.W.2d 394, 395 (Mo.App.E.D.1993); § 302.505, RSMo Cum.Supp.1993.

■ In this case, it was undisputed that Chinnery's blood alcohol content exceeded .10%. Therefore, the only issue on appeal is whether the evidence established that the police had probable cause to arrest Chinnery for operating a vehicle while intoxicated and whether the trial court erred in finding otherwise.

■ Probable cause exists when the facts and circumstances would warrant a person of reasonable caution to believe that an offense has been or is being committed. *Stoltz*, 816 S.W.2d at 714. The determination of whether an officer had probable cause to make an arrest must be made "in relation to the circumstances as they would have appeared to a prudent, cautious, and trained police officer." *Id.* (quoting *United States v. Lopez*, 777 F.2d 543, 551 (10th Cir.1985)). "To form a belief amounting to probable cause, the arresting officer need not possess all the information concerning the offense and the arrestee's participation in it." *Wilcox v. Director of Revenue*, 842 S.W.2d 240, 243 (Mo.App.W.D.1992). Nor is it necessary for an officer to actually observe a person driving in order to have probable cause to arrest for driving while intoxicated. *Williams v. Director of Revenue*, 743 S.W.2d 598, 599 (Mo.App.E.D.1988). Circumstantial evidence may be relied upon when driving is not actually observed. *Wilcox*, 842 S.W.2d at 243.

Although in this case the officers did not actually observe Chinnery driving the car prior to going off the roadway, the evidence showed that there were skid marks leading from the roadway to the location where Chin-

1. The parties stipulated to the breathalyzer test results and the qualification of the arresting officer.

2. Section 302.505.1, RSMo Cum.Supp.1993, provides that "[t]he department shall suspend or revoke the license of any person upon its determination that the person was arrested upon probable cause to believe he was driving a motor vehicle while the alcohol concentration in the person's blood or breath was ten-hundredths of one percent or more by weight of alcohol in his blood, based on the definition of alcohol concentration in section 302.500."

nery's car came to rest. When the police arrived, Chinnery was sitting behind the wheel of the car, the engine was running, and Chinnery was attempting to move the vehicle. Both officers Cutsforth and Harris personally observed Chinnery at the scene and testified that Chinnery appeared intoxicated. There was no evidence that any other persons or vehicles were present at any time before the police arrived. Officer Cutsforth testified that it appeared that the car had failed to negotiate a curve in the road and had gone over the embankment before coming to rest by a creek bed. There was no evidence to indicate that Chinnery had access to intoxicants at the accident site prior to the officer's arrival. It is also highly improbable that Chinnery would have left the accident scene, become intoxicated, and then returned to attempt to move the car at a later time. Based on the facts and circumstances as they would have appeared to a prudent, cautious and trained police officer, we conclude that the officers had probable cause to believe Chinnery had been driving the vehicle while intoxicated.

In its judgment, the trial court stated that the Director "had met its burden of proof on all issues except the issue of driving." The court found that Chinnery's vehicle was "inoperable" and that, as a matter of law, he was not "operating or in physical control of the vehicle." The objective facts are disputed. The question is whether such facts show, as a matter of law, that Chinnery was "operating" or "in actual physical control" of his vehicle at the time the police arrived. Sections 302.500–302.541 do not define the terms "driving" or "operating." However, section 577.010, which is the analogous criminal DWI statute defines "driving" or "operating" as "physically driving or operating or being in actual physical control of a motor vehicle." *Wilcox,* 842 S.W.2d at 242. The term "actual physical control" has been construed to mean "existing or present bodily restraint, directing influence, domination or regulation of a vehicle and it exists even when the vehicle is motionless as long as the person is keeping the vehicle in restraint or is in a position to regulate its movements." *Taylor v. McNeill,* 714 S.W.2d 947, 948 (Mo.App.W.D.1986). Numerous cases have held that a person may

be deemed to be "in physical control of" or "operating" a vehicle even if he is asleep or passed out in the car. *Wilcox,* 842 S.W.2d at 243–44; *Stoltz,* 816 S.W.2d at 714; *State v. Dey,* 798 S.W.2d 210, 212 (Mo.App.W.D. 1990); *State v. Nickerson,* 763 S.W.2d 716, 717 (Mo.App.E.D.1989); *Taylor,* 714 S.W.2d at 949; *Kansas City v. Troutner,* 544 S.W.2d 295, 300 (Mo.App.1976).

The fact that the police found Chinnery behind the wheel of the car with the engine running is significant. *See Wilcox,* 842 S.W.2d at 243. "A running engine is significant because it provides direct evidence of the coincidence of driving and intoxication even though an intoxicated person found alone in a motionless car may be asleep or unconscious." *Id.* While there is no requirement that the person must have intended to drive the vehicle, *Gleason v. Director of Revenue,* 859 S.W.2d 189, 191 (Mo.App.W.D. 1993), the evidence in this case clearly indicates that Chinnery was attempting to move the car from its position at the time the officers observed him.

■ To the extent that a person may be deemed to be "operating" a vehicle even if he is asleep or passed out in the car, a person may also be deemed to be "operating" a vehicle that is stuck in a ditch. *Nickerson,* 763 S.W.2d at 717. In *Nickerson,* a DWI conviction was upheld even though the defendant was found asleep or passed out in his truck and the truck was stuck in a ditch. Here also, the truck's engine was running. The court in this case held that the evidence was sufficient to establish that the defendant was operating the truck while intoxicated when the police found him asleep in his truck in the ditch. *Id.*

Other courts have also upheld DWI convictions of intoxicated persons found in vehicles that had been rendered immobile or incapable of movement. *See, e.g., State v. Taylor,* 203 Mont. 284, 661 P.2d 33 (1983); *Latham v. State,* 707 P.2d 941 (Alaska App.1985). In *Taylor,* a DWI conviction was upheld where defendant was found to have been "in actual physical control" of a motor vehicle even though he was asleep or passed out in his car which had been rendered immobile and was

stuck in a borrow pit. Applying the same definition of "actual physical control" as adopted by courts of this state, the court specifically noted that "[m]ovement of a vehicle is not required for 'actual physical control.'" *Taylor*, 661 P.2d at 34.

Applying the same analysis, the court in *Lathan* upheld a DWI conviction where the defendant was found asleep in his car that was stuck in the mud. In that case, the court found that the defendant was in "actual physical control" and "operating" his vehicle notwithstanding that he had purportedly become intoxicated after his car had been rendered immobile. *Lathan*, 707 P.2d at 943.

In his case, Chinnery was found behind the wheel of a running car attempting to move the vehicle from its position. He was intoxicated when the officers discovered him in the car. In determining that Chinnery was not "operating" or "in physical control" of the vehicle when the officers found him, the court based its decision on a factual finding that Chinnery's car was "inoperable" at the time the officers arrived. The court concluded that since Chinnery's car was "inoperable," he could not have been "operating" or "in physical control" of the vehicle. In reaching this conclusion, the trial court relied, at least in part, on *State v. Liebhart*, 707 S.W.2d 427 (Mo.App.W.D.1986). In *Liebhart*, the defendant was charged with operating a motor vehicle while intoxicated under the criminal DWI statute, § 577.010, RSMo 1986. In that case, the defendant's vehicle had gone off the highway, traveled down an embankment, proceeded across a parking lot and had come to rest against a light pole. *Id.* at 428. The defendant was found sitting in the driver's seat of his car attempting to start the engine. *Id.* This court determined that although there was sufficient evidence to establish that defendant was intoxicated, the defendant's actions of attempting to start the car did not constitute "operating" a vehicle. *Id.* at 429.

The instant case is distinguishable from *Liebhart* in at least two respects. First, in *Liebhart*, the State had to prove beyond a reasonable doubt that the defendant operated a motor vehicle while he was intoxicated. Here, however, the Director has a lesser burden of proof. The Director need only show, by a preponderance of the evidence, that the police had probable cause to arrest the petitioner for driving while intoxicated. *Buckley*, 864 S.W.2d at 395. Secondly, in *Liebhart*, the court found that the defendant could not have been "operating" the vehicle because the engine was not running when the police observed him. *Liebhart*, 707 S.W.2d at 430. Here, however, the uncontested evidence clearly established that when the officers observed Chinnery, he was behind the wheel of the car with the engine running and the rear tires spinning, attempting to move the vehicle from its position. At that point, he was clearly exercising dominion over the operative controls of the vehicle for the purpose, albeit unsuccessfully, of putting the car in motion and moving it. These facts indicate that Chinnery was exercising some degree of physical control over the regulation of the car when the officers observed him. In view of these facts, it is evident that the car was "operable" at least insofar as the engine was running and the rear tires were spinning. It was not necessary for the court to find that the car could be driven out of the ditch. *See, e.g., Nickerson*, 763 S.W.2d at 717.

In concluding that Chinnery was not "operating" or "in actual physical control of" his vehicle, the trial court misapplied the law. Therefore, the judgment of the trial court is reversed and the cause remanded for reinstatement of the suspension order.

All concur.