IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 124,920

SHANA L. JARMER,
*Appellant*,

v.

KANSAS DEPARTMENT OF REVENUE,
*Appellee.*

SYLLABUS BY THE COURT

1.

K.S.A. 8-1002(a) distinguishes operation of a vehicle from attempted operation of a vehicle. The word "operate," as used in K.S.A. 8-1002(a), is synonymous with the word "drive," which requires that the vehicle must move. A would-be driver's physical control over the vehicle does not establish "operation" of the vehicle.

2.

When an individual fails a breath alcohol test, K.S.A. 8-1002(a)(2) authorizes the Kansas Department of Revenue to suspend that person's driving privileges if they were operating a vehicle, but not if they were attempting to operate a vehicle.

Review of the judgment of the Court of Appeals in 63 Kan. App. 2d 37, 524 P.3d 68 (2023). Appeal from Sumner District Court; GATEN WOOD, judge. Oral argument held September 13, 2023. Opinion filed April 19, 2024. Judgment of the Court of Appeals affirming the district court is reversed. Judgment of the district court is reversed, and the case is remanded to the Kansas Department of Revenue.

*C. Ryan Gering*, of Hulnick, Stang, Gering & Leavitt, P.A., of Wichita, argued the cause and was on the brief for appellant.

*Charles P. Bradley*, of Legal Services Bureau, Kansas Department of Revenue, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

WILSON, J.:  Shana L. Jarmer challenges the suspension of her driver's license following a failed breath alcohol test. Jarmer claims that, because her car was stuck in the mud and could not move, her efforts to drive it only constituted attempted operation—not *actual* operation, as required by K.S.A. 2020 Supp. 8-1002(a)(2)(A). The district court and a panel of the Kansas Court of Appeals rejected this argument. *Jarmer v. Kansas Dept. of Revenue*, 63 Kan. App. 2d 37, 524 P.3d 68 (2023). But these rulings conflict with our precedent in *State v. Darrow*, 304 Kan. 710, 714, 374 P.3d 673 (2016), and *State v. Kendall*, 274 Kan. 1003, 1009, 58 P.3d 660 (2002), wherein we held that "operation" of a vehicle requires actual movement. Because we see no reason to depart from that precedent, we reverse the suspension of Jarmer's license.

## FACTS AND PROCEDURAL BACKGROUND

Given the straightforward nature of this case's underlying facts, we repeat the panel's summary of the matter:

> "On January 24, 2021, law enforcement was called to the scene of a vehicle accident. Jarmer's husband had apparently driven their vehicle into a house before landing in a muddy ditch. Law enforcement arrived to find the couple trying to maneuver the vehicle out of the ditch. Jarmer was in the driver's seat, pressing the gas pedal with her hands on the steering wheel. The vehicle's tires were spinning, and her husband was pushing it from the rear. The vehicle itself was not moving, however, because of the muddy conditions.

"Jarmer submitted to a breath alcohol test and the result was 0.156. The legal limit in Kansas is 0.08. See K.S.A. 2021 Supp. 8-1567(a). She was arrested for driving under the influence (DUI), and she was notified her driving privileges would be suspended by the Kansas Department of Revenue (KDR) under K.S.A. 2020 Supp. 8-1014.

"Jarmer requested an administrative hearing to challenge the suspension of her driving privileges. The KDR upheld the suspension, finding Jarmer 'operated [the] vehicle while [her] husband pushed [the] car.' Jarmer then sought judicial review of this decision in Sumner County District Court. She argued that because the vehicle was not moving from one point to another, she was not 'operating' or 'driving' the vehicle. Instead, she claimed she was merely attempting to operate the vehicle, so the administrative suspension of her driver's license was improper. The relevant statute, K.S.A. 2020 Supp. 8-1002(a)(2)(A), requires the operation of a vehicle, rather than attempted operation, if the driver fails a breath alcohol test. In contrast, K.S.A. 2020 Supp. 8-1002(a)(1)(A) requires either operation or attempted operation if the driver refuses a breath alcohol test.

"The district court denied Jarmer's petition after finding Jarmer was operating the vehicle since the engine was running, she was behind the wheel, and the tires were spinning. It emphasized that, but for the muddy conditions, the vehicle would have been in motion." *Jarmer*, 63 Kan. App. 2d at 37-38.

On appeal, the panel agreed with the district court, affirming Jarmer's license suspension. After distinguishing various Kansas cases cited by Jarmer because "none of the vehicles involved in those cases were even in gear, and none of the drivers were awake when discovered by law enforcement," the panel instead looked to *Hines v. Director of Revenue*, 916 S.W.2d 884 (Mo. Ct. App. 1996), and *Commonwealth of Pennsylvania v. Kallus*, 212 Pa. Super. 504, 507, 243 A.2d 483 (1968), for guidance. 63 Kan. App. 2d at 39-41. The panel reasoned that Jarmer "was in actual physical control of the movements of the machinery of the vehicle and . . . had she succeeded in her efforts, she could have seriously jeopardized the public safety that K.S.A. 2020 Supp. 8-

1002(a)(2) was intended to protect" and—relying on this court's recent interpretation of "operate" in a Kansas Offender Registration Act case—concluded that "Jarmer operated the vehicle because she caused it to function or work when she engaged the transmission and pressed the gas pedal." 63 Kan. App. 2d at 41-42 (citing *State v. Moler*, 316 Kan. 565, 519 P.3d 794 [2022]).

Jarmer petitioned this court for review, which we granted.

ANALYSIS

Jarmer claims the panel erred in its interpretation of K.S.A. 2020 Supp. 8-1002(a)(2)(A) and asks that we reverse the suspension of her driver's license. Her argument requires us to interpret Kansas statutes and our own precedent. For such questions of law, we review the matter de novo. E.g., *Fisher v. Kansas Dept. of Revenue*, 317 Kan. 119, 121, 526 P.3d 665 (2023); *Scott v. Hughes*, 294 Kan. 403, 412, 275 P.3d 890 (2012).

> "'All Kansas courts use the same starting point when interpreting statutes: The Legislature's intent controls. To divine that intent, courts examine the language of the provision and apply plain and unambiguous language as written. If the Legislature's intent is not clear from the language, a court may look to legislative history, background considerations, and canons of construction to help determine legislative intent.'" *Fisher*, 317 Kan. at 121 (quoting *Jarvis v. Dept. of Revenue*, 312 Kan. 156, 159, 473 P.3d 869 [2020]).

But the panel's analysis also implicates the doctrine of stare decisis. "Although we are not inextricably bound by our own precedent, '[w]e do not overrule precedent lightly and must give full consideration to the doctrine of stare decisis.'" *State v. Uk*, 311 Kan. 393, 399, 461 P.3d 32 (2020) (quoting *State v. Sherman*, 305 Kan. 88, 107, 378 P.3d 1060 [2016]). Indeed, "'this court endeavors to adhere to the principle unless clearly convinced

4

a rule of law established in its earlier cases "'was originally erroneous or is no longer sound because of changing conditions and that more good than harm will come by departing from precedent.'" [Citations omitted.]" *State v. Clark*, 313 Kan. 556, 565, 486 P.3d 591 (2021) (quoting *State v. Hambright*, 310 Kan. 408, 416, 447 P.3d 972 [2019]).

We begin with the plain language of K.S.A. 8-1002(a)(1)-(2), which provides, in relevant part:

"(a) Whenever a test is requested pursuant to this act and results in either a test failure or test refusal, a law enforcement officer's certification shall be prepared. . . . The certification required by this section shall be signed by one or more officers to certify:

(1) With regard to a *test refusal*, that: (A) There existed reasonable grounds to believe *the person was operating or attempting to operate a vehicle* while under the influence of alcohol or drugs, or both . . . .

(2) With regard to a *test failure*, that: (A) There existed reasonable grounds to believe *the person was operating a vehicle* while under the influence of alcohol or drugs, or both . . . ." (Emphases added.)

After a driver either refuses or fails a test, the officer "shall serve upon the person notice of suspension of driving privileges pursuant to K.S.A. 8-1014, and amendments thereto." K.S.A. 8-1002(c).

Here, Jarmer failed a breath alcohol test. Accordingly, K.S.A. 2020 Supp. 8-1002(a)(2)(A) authorized the KDR to suspend her driver's license if the certifying officer had reasonable grounds to believe she was *operating* a vehicle—not merely *attempting* to operate a vehicle, as would be the case had she outright refused a test under K.S.A. 2020 Supp. 8-1002(a)(1)(A).

5

We have previously considered the distinction between "operating" and "attempting to operate" a vehicle in the context of prosecutions for driving under the influence. In *State v. Fish*, 228 Kan. 204, 205, 612 P.2d 180 (1980), the defendant was found asleep in the driver's seat of a car that was parked—albeit with the motor running—at a local "community trash receptacle." The State conceded that if "the words 'operating' and 'driving' are synonymous and that some movement of the vehicle while under the defendant's control is needed to prove driving," the evidence was insufficient to sustain a conviction under K.S.A. 8-1567(a). *Fish*, 228 Kan. at 205. After examining the statutes and both prior Kansas cases and the law in other jurisdictions, the court held that the Legislature "intended the words 'operate' and 'drive' to be considered as synonymous terms" for purposes of the Uniform Act Regulating Traffic on Highways. *Fish*, 228 Kan. at 207. In other words, a conviction for driving under the influence based on "operating" a vehicle requires "some evidence, either direct or circumstantial, that the defendant drove the automobile while intoxicated." 228 Kan. at 210.

We echoed that distinction in *State v. Kendall*, 274 Kan. 1003, 1009, 58 P.3d 660 (2002), where we rejected the State's invitation to overrule *Fish*. The State argued that "the definition of 'operate' is much broader than the definition of 'drive' and encompasses other activities involving a vehicle, including sitting inside it with the engine running or fastening a seat belt." *Kendall*, 274 Kan. at 1009. Instead, we noted that the Legislature had amended K.S.A. 8-1567 since *Fish*—but only to add "attempted" operation of a vehicle to the definition of driving under the influence. *Kendall*, 274 Kan. at 1009-10. Thus, as amended:

> "[T]he current version of the DUI statute at issue here encompasses both those accused of actually driving while under the influence and those who merely tried but failed, with no election required. Movement of the vehicle is not required in order to convict a defendant of DUI under the theory that defendant attempted to operate the vehicle." *Kendall*, 274 Kan. at 1009-10.

6

We reaffirmed this construction in *Darrow*. There, the parties framed the core inquiry as, "'Is fumbling with [the] gear shift while [the] vehicle is running, operating or attempting to operate a motor vehicle?'" *Darrow*, 304 Kan. at 712. Yet again, we held that:

> "[T]o 'operate' means to 'drive'; 'driving' requires movement of the vehicle; therefore, 'operating' requires movement of the vehicle, and an 'attempt to operate' means to attempt to move the vehicle. Taking actual physical control of the vehicle is insufficient to attempt to operate that vehicle without an attempt to make it move." *Darrow*, 304 Kan. at 714.

We further held that circumstantial evidence, when viewed in a light most favorable to the State, could support the conclusion that Darrow was attempting to make the car move by "fumbling" with the gear shift. *Darrow*, 304 Kan. at 718-20. Specifically, we observed that:

> "[T]he vehicle's engine was running, i.e., *the vehicle was ready to move upon the engagement of the transmission*; Darrow had previously moved into the driver's seat, i.e., she had intentionally placed herself in a position to manipulate the controls necessary to move the vehicle and may have been the one to start the engine; and, upon being awakened, Darrow reached down and fumbled with the gear shift lever, i.e., she made an overt act toward engaging the transmission, *which was arguably the last act needed to legally 'drive' the vehicle.*" (Emphases added.) *Darrow*, 304 Kan. at 718-19.

We most recently reaffirmed this point of law in *State v. Zeiner*, 316 Kan. 346, 352-53, 515 P.3d 736 (2022), albeit briefly. Critically, we observed that any actions taken by a defendant *after* he parked his car—such as turning on the lights and radio—could not be considered "operating" the car, since these actions had no bearing on making the car move. *Zeiner*, 316 Kan. at 353.

Here, the panel correctly observed that, in all four of the aforementioned cases, "none of the vehicles involved . . . were even in gear, and none of the drivers were awake when discovered by law enforcement." *Jarmer*, 63 Kan. App. 2d at 39. It then cited a pair of out-of-state cases which, it claimed, fit the situation better: *Hines*, 916 S.W.2d at 886, and *Kallus*, 212 Pa. Super. at 507. Then it embraced an out-of-context "common meaning" definition of "operate" set forth by this court in *Moler*, 316 Kan. at 572: "'bring about, effect'; 'to cause to function, work'; 'to put or keep in operation'; or 'to perform an operation on.'" *Jarmer*, 63 Kan. App. 2d at 40-42. The panel then "agree[d] with the district court's finding that Jarmer operated the vehicle because she caused it to function or work when she engaged the transmission and pressed the gas pedal." 63 Kan. App. 2d at 42.

Admittedly, both *Hines* and *Kallus* more closely resemble the situation here. But both cases conflict with our precedent requiring *movement* as a component of vehicular operation. *Hines* relied on *Chinnery v. Director of Revenue*, 885 S.W.2d 50 (Mo. Ct. App. 1994), which held that "driving or operating a vehicle occurs 'even when the vehicle is motionless as long as the person is keeping the vehicle in restraint or is in a position to regulate its movements.'" *Hines*, 916 S.W.2d at 886 (quoting *Chinnery*, 885 S.W.2d at 52). Indeed, in the portion of *Hines* quoted by the panel, the Missouri Court of Appeals even wrote that "'in *attempting* to move the vehicle from the ditch, Mrs. Hines was the person in a position to regulate its movement'"—which may constitute "driving" or "operating" a vehicle in Missouri, but not under *Darrow*, *Kendall*, and *Fish*. *Jarmer*, 63 Kan. App. 2d at 40-41 (quoting *Hines*, 916 S.W.2d at 886). The same is true of the language the panel cited from *Kallus*:

> "'We agree with the reasoning of the court below that it is not necessary that the vehicle itself must be in motion but that it is sufficient if the operator is in actual physical control of the movements of either the machinery of the motor vehicle or of the

8

management of the movement of the vehicle itself.'" *Jarmer*, 63 Kan. App. 2d at 41 (quoting *Kallus*, 212 Pa. Super. at 507-08).

Nor are we persuaded by the panel's out-of-context citation to *Moler*. There, the court's attention was not on the distinction between driving and *trying* to drive a vehicle; instead, the court considered, for purposes of the Kansas Offender Registration Act, whether "operation" means regular or repeated use of a vehicle or one-time use. *Moler*, 316 Kan. at 571 ("Moler does not dispute that driving a vehicle constitutes its operation and concedes the term 'operated' can encompass either 'regular, ongoing use' or a 'one-time use' in a different context."). *Moler* has no applicability here, and the panel's attempt to import its broader definition is unavailing.

We are thus far from clearly convinced to depart from our precedent. E.g., *Clark*, 313 Kan. at 565 (Though "'stare decisis is not an inexorable command,'" we follow this stabilizing legal principle unless we are clearly convinced the rule of law already established by caselaw was originally wrong or changing conditions show the rule can no longer stand, and more good than harm would result by departing from precedent.). We reiterate that to "operate" a vehicle means to "drive" it—which further requires *motion* on the part of the vehicle. While we recognize the intuitive appeal of the panel's efforts to expand this definition in light of Jarmer's more overt efforts towards driving her vehicle than in *Darrow*, *Kendall*, and *Fish*, we continue to emphasize that vehicular movement—not physical control—distinguishes "operation" of a vehicle from *attempts* to operate a vehicle.

We now turn that lens upon the facts here. While those facts are slim, they reveal that Jarmer unquestionably *attempted* to operate the vehicle. The facts further show that Jarmer's vehicle *would* have moved, but for the mud—which would, just as unquestionably, have constituted "driving" and thus "operation" under our precedent. But Jarmer's car did not move, despite her best efforts; the rotation of its wheels apparently

9

proved totally ineffectual. In other words, it was *factually* impossible for Jarmer to "move"—and, under our precedent, "operate"—the vehicle. "'Factual impossibility denotes conduct where the objective is proscribed by the criminal law but a circumstance unknown to the actor prevents him from bringing it about.'" *State v. Logan*, 232 Kan. 646, 647, 656 P.2d 777 (1983) (quoting *United States v. Conway*, 507 F.2d 1047, 1050 [5th Cir. 1975]) (noting the "classic example" of factual impossibility is "the thief who picks an empty pocket").

The dissent suggests that we should leave the question of what constitutes "operation" up to the jury as a matter of "common sense." Slip op. at 12. It further poses several hypotheticals that, it suggests, show that the question before us cannot be answered by legal analysis. And, indeed, if the question before us was merely, "Did Jarmer operate the vehicle or didn't she?" we might agree that the issue ought to be reviewed solely as an issue of fact. But the Legislature has not made our task so simple. Instead of a simple binary choice, the Legislature has *also* included the term "attempted" operation of a vehicle for our consideration. While "operation" may be plain language on its own, the "attempted" modifier requires additional consideration that cannot be answered by a broad appeal to "common sense"—as the dissent's own summary of the case suggests: "Jarmer was engaging the drive train of the vehicle, spinning the tires, and *attempting* to get the car out of the ditch." (Emphasis added.) Slip op. at 12. And until the Legislature removes this distinction, legal analysis is needed to guide a fact-finder's common sense.

The Legislature continues to draw a distinction between operation and *attempted* operation of a vehicle. This distinction would not matter had Jarmer refused a breath test, since K.S.A. 8-1002(a)(1)(A) permits the suspension of a license for either act. But "almost"—while it may count in horseshoes and hand grenades—does not warrant suspension of a driver's license under K.S.A. 8-1002(a)(2)(A). When Jarmer's car remained stuck in the mud, her attempt to drive it failed.

CONCLUSION

Under *Darrow*, Jarmer's unsuccessful effort to drive her car out of a muddy ditch fails to satisfy K.S.A. 8-1002(a)(2)(A)'s requirement that she was "operating a vehicle while under the influence of alcohol or drugs, or both." Because the evidence presented establishes only that she attempted to operate her vehicle, the KDR could not suspend her driver's license under K.S.A. 8-1002(a)(2)(A) following her failed breath test. We thus reverse the suspension of Jarmer's driver's license and remand the matter to the KDR for further proceedings.

Judgment of the Court of Appeals affirming the district court is reversed. Judgment of the district court is reversed, and the case is remanded to the KDR.

\* \* \*

STEGALL, J., dissenting: I take no issue with the majority's characterization of either the underlying facts or precedent in this case. I disagree, however, with the way today's majority extends and applies that caselaw. Rather than continuing to pinpoint—as a matter of law—when, precisely, a person is operating or driving a vehicle, I would resolve today's case and future similar cases by recognizing that after a broad legal definition is pronounced, the case-by-case application of that definition is a question of fact to be answered by the fact-finder.

The most fundamental rule of statutory construction is that the intent of the Legislature governs if that intent can be ascertained. *State v. LaPointe*, 309 Kan. 299, 314, 434 P.3d 850 (2019). "Reliance on the plain and unambiguous language of a statute is 'the best and only safe rule for determining the intent of the creators of a written

law. . . . The plain language selected by the legislature, when it does not conflict with constitutional mandates, *trumps both judicial decisions and the policies advocated by parties*.'" *State v. Spencer Gifts*, *LLC*, 304 Kan. 755, 761, 374 P.3d 680 (2016); see also *Taylor v. Kobach*, 300 Kan. 731, 735, 334 P.3d 306 (2014) ("We have often expressed that the best and only safe rule for ascertaining the intention of the makers of any written law is to abide by the language they have used.").

K.S.A. 8-1002(a)(2) requires an officer to have reasonable grounds to believe that the person was *operating* a vehicle while under the influence. Our cases have interpreted "operate" to mean "drive"—and "driving" to require "actual movement." See *State v. Darrow*, 304 Kan. 710, 714, 374 P.3d 673 (2016). But the law cannot definitionally answer every imaginable scenario with a clear yes or no. When an appellate court forgets this, we will inevitably go beyond giving "definitional" guidance and become fact-finders ourselves. Today's decision defines "actual movement" in a way that no reasonable person would recognize as definitionally related to the act of operating a motor vehicle. I fail to understand how causing the actual movement of the mechanical mechanisms of the drivetrain of the car, done with an intent to steer the vehicle out of a ditch, does not satisfy the Legislature's intent behind the word "operate" as used in K.S.A. 8-1002(a)(2). Today's outcome falls far outside the plain meaning of the statute and produces what I believe to be an absurd result. *State v. Eckert*, 317 Kan. 21, 31, 522 P.3d 796 (2023) ("A court 'must construe a statute to avoid unreasonable or absurd results.'").

Jarmer was engaging the drive train of the vehicle, spinning the tires, and attempting to get the car out of the ditch. Was she driving? This is a common-sense factual question easily understood by a fact-finder and we should not step into every case and take the question away from a jury or other fact-finder by increasingly narrow and obscure layers of legal definition. Is a drag racer doing a stationary burnout not "driving" their car? On the other hand, what about a mechanic operating a vehicle's drive train while the vehicle is on a lift? Or a motorcycle being revved up to show off a new motor,

12

but the transmission is disconnected? See *Cullison v. Kansas Dept. of Revenue*, 52 Kan. App. 2d 745, 372 P.3d 442 (2016). These circumstances—and the infinite variety of facts that may arise—are not amenable to definitive legal conclusions. They present, instead, fact questions which ought to be submitted to the real-world judgment of fact-finders.

If we were to review the question presented as one of fact, we would be able to determine whether substantial competent evidence supported the factual findings when considered in light of all the evidence. *Hanson v. Kansas Corp. Comm'n*, 313 Kan. 752, 763, 490 P.3d 1216 (2021). Here, I would hold there was substantial competent evidence to support the hearing officer's conclusion to establish reasonable grounds to believe Jarmer was operating the vehicle.

STANDRIDGE, J., joins the foregoing dissenting opinion.